Thomas J. BLANKENSHIP, Appellant,

v.

BRAZOS HIGHER EDUCATION
AUTHORITY, INC., et al.,
Appellees.

No. 10–97–219–CV.

Court of Appeals of Texas,
Waco.

Aug. 12, 1998.

Rehearing Overruled Sept. 9, 1998.

Thomas J. Blankenship, Waco, pro se.

M. Scott Incerto, Marcy Hogan Greer & Rebecca E. Edgar, Fulbright & Jaworski, L.L.P., Austin, Charles D. Olson, Haley & Davis, P.C., Waco, for appellees.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Appellant, Thomas Blankenship, appeals a summary judgment granted in favor of Brazos Higher Education Authority, Inc., Brazos Higher Education Service Corporation, Inc., Murray Watson, Jr., the City of Waco, and Nana Cornwell.

## FACTUAL BACKGROUND

Brazos Higher Education Authority, Inc. ("Brazos") is a nonprofit corporation that issues revenue bonds to purchase student loans. Brazos Higher Education Service Corporation, Inc. ("Brazos Service Corp.") is a nonprofit corporation which services loans for Brazos and other secondary-market purchasers. The two nonprofit corporations are collectively referred to herein as the "Brazos appellees."

Blankenship sent a request to the Brazos appellees on November 14, 1996 for information under the Public Information Act.[1] *See* TEX. GOV'T CODE ANN. §§ 552.001—552.353 (Vernon 1994 & Supp.1998). He requested:

any and all documents which show or tend to show all monies paid out to Murray Watson, Jr., and Ralph T. Strother from the Brazos Higher Education Authority and the Brazos Higher Education Service Corporation for the past ten (10) years along with any and all documents which show or tend to show the purposes for which said money was paid out. "Money paid out" includes anything of value, not just cash. Examples of "purposes" would include, but not be limited to, rental payments to either person; salaries, wages, benefits, or other emoluments paid to either person; gifts, donations, or gratuities of any kind or description; expenses paid to either person along with the documents supporting the payment of such expenses; payments to the spouses of either person.

On November 22, the Brazos appellees filed a petition for declaratory judgment to establish that they are not subject to the Public Information Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). On November 25, the Brazos appellees informed Blankenship by separate letters faxed from their office and their counsel's office that they would not comply with his November 14 request because they are not governmental entities under the Public Information Act. *See* TEX. GOV'T CODE ANN. § 552.003 (Vernon Supp.1998). Counsel also sent a letter to the attorney general's office requesting an opinion on whether the Brazos appellees are governmental bodies under the Public Information Act. Apparently, the attorney general has not issued an opinion on this issue as none of the parties has referred to such opinion.

- Blankenship sent a request for information to the City of Waco on November 25. He requested the same information that he had requested from the Brazos appellees. The City of Waco replied on November 27 that it had no records or documents relating to the request.

- On November 26, Blankenship sent another request to the Brazos appellees asking for any documents which show or tend to show the amount and date of each bond issue, to whom they were sold, the interest rate, and the date of maturity of each issue for the past ten years. He also requested documents which show or tend to show the amount paid to the law firm of Fulbright & Jaworski in connection with each bond issue. This request was denied on December 4.

- Blankenship sent another request to the Brazos appellees on November 27. He requested the minutes for Board of Directors meetings for the last ten years at which bonds were approved. He also requested the official agendas for the meetings and documents which show or tend to show the posting of notices for the meetings. This request was denied on December 6.

- Blankenship sent another request to the City of Waco on December 6 and requested any notices of Brazos meetings posted by the City for the past five years. He also requested minutes of city council meetings for the past ten years where bond issues for Brazos were approved and also requested documents which show or tend to show the amount of each bond issue, the maturity dates, and whether the bonds were secured by the City of Waco in

---

1. The Legislature amended chapter 552 of the Government Code effective September 1, 1995 to redesignate the former Texas Open Records Act as the Public Information Act. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 29, 1995 Tex. Gen. Laws 5127, 5142. While the parties refer to chapter 552 as the Texas Open Records Act ("TORA") in their briefs, we will refer to it as the Public Information Act.

any respect. According to the affidavit of Nana Cornwell, the City Secretary of Waco, the City produced over 500 documents responsive to this request.

## PROCEDURAL HISTORY

On December 16, Blankenship filed an answer, counterclaim, and original cross-petition. He entered a general denial to the Brazos appellees' declaratory judgment action. Blankenship counterclaimed against the Brazos appellees asking for a declaratory judgment that they are governmental bodies subject to the Public Information Act. He further counterclaimed against the Brazos appellees for filing a frivolous lawsuit under Rule 13 of the Texas Rules of Civil Procedure and sought sanctions (attorney's fees and costs) under Rule 215–2(b). Tex.R. Civ. P. 13, 215–2(b). Blankenship requested a writ of mandamus against the Brazos appellees to compel them to make the information requested available for inspection and requested attorney's fees. *See* Tex. Gov't Code Ann. § 552.321 (Vernon Supp.1998), § 552.323 (Vernon 1994).

• Blankenship filed a cross-petition against Murray Watson, Jr., Secretary of the Brazos appellees, for a writ of mandamus to compel Watson to supply the public information requested.

• He also brought a cross-petition for a writ of mandamus against Nana Cornwell, City Secretary of Waco, and the City of Waco to compel Cornwell to supply the public information requested.

• The Brazos appellees filed a joint motion for summary judgment which argued that they are not governmental bodies, and thus not subject to the Public Information Act.

• The City of Waco and Cornwell filed a motion for summary judgment which alleged that the City had produced all the documents requested.

• Blankenship filed objections to the summary judgment evidence which the court sustained in part and overruled in part on January 22, 1997.

• He filed a response to the motion for summary judgment which argued that the Brazos appellees are governmental bodies under the Public Information Act. He also filed a response to the City of Waco's and Cornwell's motion for summary judgment.

• On January 27, a take-nothing judgment was signed in favor of the City of Waco and Cornwell.

• On February 7, the court granted the Brazos appellees' motion for summary judgment, finding that they were not subject to the Public Information Act.

• Watson then filed a motion for summary judgment which was granted.

• The final judgment was signed on April 30 and recites that all pending claims have been resolved.

The judgment states that summary judgment had been previously granted in favor of the Brazos appellees and the following findings were made:

(1) Brazos is not a Higher Education Authority created by a city under § 53.11 of the Texas Education Code, but is rather a nonprofit corporation operating under § 53.47(e) of the Education Code, pursuant to the request of the City of Waco, and (2) plaintiffs are not governmental bodies as defined in section 552.003(a) of the Texas Open Records Act [2] (the "Act"), and therefore are not subject to the Act or any requests for documents made pursuant to the Act.

The judgment also reflects that the motions for summary judgment filed by Watson, the City of Waco, and Cornwell have been granted.

Blankenship's three issues for review allege that the court erred in granting the summary judgment in favor of the Brazos appellees, Watson, the City of Waco, and Cornwell. He also alleges subsidiary issues with respect to each summary judgment motion.

## BRAZOS APPELLEES

Blankenship argues in his first issue that the court erred in granting the summary judgment in favor of the Brazos appellees.

---

**2.** *See* note 1, *supra.*

He argues in subsidiary issues that the court erred in overruling his objections to the summary judgment evidence. He alleges that the court erred in finding that the Brazos appellees are not governmental bodies under the Public Information Act. Thus he contends, the court erred in not awarding him attorney's fees under the Uniform Declaratory Judgment Act or the Public Information Act. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997); TEX. GOV'T CODE ANN. § 552.323(a). He also asserts that the court erred in not submitting the issue of the amount of attorney's fees to a jury.

The Public Information Act provides that "public information" is available to the public. TEX. GOV'T CODE ANN. § 552.021 (Vernon Supp.1998). Public information is defined as "information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" "by a governmental body." *Id.* § 552.002(a)(1). Section 552.003 of the Act provides definitions of a "governmental body." [3] Blankenship contends that the Brazos appellees are governmental bodies under the following definitions:

- a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality; and

- the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds.

*Id.* § 552.003(1)(A)(iv), (x). "Public funds" are "funds of the state or of a governmental subdivision of the state." *Id.* § 552.003(5).

In order to determine whether the Brazos appellees are governmental bodies, we must examine their history and function. Brazos was originally incorporated under the name Student Education Loan Fund ("SELF"). The articles of incorporation were filed with the Secretary of State on May 16, 1975. SELF was organized as a nonprofit corporation to assist educational institutions located in McLennan County by funding or financing student loans and by owning, constructing, operating, and maintaining housing facilities for students.

The Legislature enacted section 53.47 of the Education Code in 1975 to allow the issuance of bonds for the purchase of student loan notes. *See* Act of May 28, 1975, 64th Leg., R.S., ch. 365, § 1, 1975 Tex. Gen. Laws 963, 964 (amended 1981) (current version at TEX. EDUC.CODE ANN. § 53.47 (Vernon 1996)). When section 53.47 was enacted, the Education Code already allowed a city to create a higher education authority that could issue revenue bonds to purchase or construct educational and housing facilities. TEX. EDUC.CODE ANN. §§ 53.11, 53.33 (Vernon 1996), § 53.34 (Vernon 1996 & Supp. 1998). Section 53.47 authorizes both higher education authorities created by a city under section 53.11 and nonprofit corporations which perform the functions of a higher education authority to issue bonds for the purchase of student loans. Section 53.47(e) states in pertinent part:

In addition to establishing an authority under the provisions of this chapter, the governing body of a city or cities may request a nonprofit corporation organized to exercise the powers enumerated and provided in this section for and on its behalf. If the corporation agrees to exer-

---

3. According to section 552.003(1), "Governmental body": (A) means: (i) a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members; (ii) a county commissioners court in the state; (iii) a municipal governing body in the state; (iv) a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality; (v) a school district board of trustees; (vi) a county board of school trustees; (vii) a county board of education; (viii) the governing board of a special district; (ix) the governing body of a nonprofit corporation organized under Chapter 76, Acts of the 43rd Legislature, 1st Called Session, 1933 (Article 1434a, Vernon's Texas Civil Statutes), that provides a water supply or wastewater service, or both, and is exempt from ad valorem taxation under Section 11.30, Tax Code; and (x) the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds; and (B) does not include the judiciary. TEX. GOV'T CODE ANN. § 552.003(1) (Vernon Supp.1998).

cise such powers, the directors of such corporation shall thereafter be appointed by and be subject to removal by the governing body of the city or cities, and except as provided in this section, Sections 53.14, 53.15, 53.31, 53.32, 53.38, and 53.41 through 53.43 of the Texas Education Code shall apply to and govern such corporation, its procedures, and bonds.

*Id.* § 53.47(e).

### CITY ORDINANCE

On July 29, 1975, the Waco City Council passed Ordinance 3266, which states that SELF was formed for the purposes stated in its articles of incorporation and proposed to issue revenue bonds to obtain funds to purchase student loan notes. The ordinance states: "the bonds so issued by [SELF] would be payable from and secured by a pledge of revenues derived from or by reason of the ownership of student loan notes and investment income after deduction of such expenses of operating the loan program as may be specified by the bond resolution or trust indenture." The bond proceeds are "to be expended solely for the purchase of student loan notes executed by students who are residents of the area or who have been admitted to an accredited institution of higher learning."

The ordinance also states that "the corporation will, without the intervention of private gain, provide educational opportunities for students of and in this area which might not otherwise be available, and this governing body wishes to encourage such endeavors by providing support (not financial) to the organization." In sections 1 and 2 of the ordinance, the council ratified, confirmed, and approved the incorporation and creation of SELF and approved the board of directors. Section 4 states: "That the undertaking of this governing body as a sponsor of the said Corporation and its activities does not and shall not cause any pecuniary liability to be imposed upon this City. . . ."

Brazos contends that the City requested it, by virtue of the ordinance and as an existing nonprofit corporation, to exercise the powers enumerated in section 53.47(e). The trial court found that Brazos is not a higher edu-

cation authority created under section 53.11, and Blankenship does not attack that finding. Thus, we find that Brazos is a nonprofit corporation which the City requested to exercise the powers enumerated in section 53.47(e).

On October 12, 1978, the articles of incorporation were amended and the name was changed from SELF to Brazos Higher Education Authority. The purpose of the corporation was amended as follows: "The corporation is organized for educational purposes, to wit: to provide funds for the acquisition of student loans of students at the college or university level and to provide procedures for the servicing of such loans as required for continued participation in the Federally Insurance [sic] Guaranteed Student Loan Program under the Higher Education Act of 1965 as amended." *See* 20 U.S.C.A. §§ 1001—1146a (West 1990 & Supp.1998).

Articles of incorporation for the Brazos Higher Education Service Corporation, Inc. were filed with the Secretary of State on September 28, 1980. Brazos Service Corp. is a nonprofit corporation which services student loans for Brazos and other secondary-market purchasers. Brazos Service Corp. does not issue bonds or buy student loans. Blankenship agrees that the only way Brazos Service Corp. can be held to be a governmental body is as an agent of Brazos.

### OBJECTIONS

■ We will first address Blankenship's contention that the court erred in overruling his objections to the Brazos appellees' summary judgment evidence. Blankenship alleges that Watson's statement in his affidavit, that Brazos does not receive any public funds or funds from the State of Texas, the City of Waco, or McLennan County, is inadmissible opinion testimony, not based on personal knowledge, and merely conclusory. Blankenship also objected to Watson's deposition testimony, that Brazos does not receive any public funds from the City of Waco or from the State, as inadmissible opinion testimony, not based on personal knowledge, conclusory, and a legal conclusion. Watson was one of the original incorporators and since the beginning has served Brazos on the board of

directors. As secretary of Brazos, Watson is the custodian of the corporation's records. Watson is an interested witness, but summary judgment can be based on an affidavit of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R. CIV. P. 166a(c).

Watson claims personal knowledge of the nature of the funds that Brazos receives by virtue of his position as secretary and custodian of corporate records. Therefore, his testimony is not merely an opinion but based on facts known to him. Watson's statement that Brazos is not supported by public funds is not conclusory, as it details how Brazos is supported. Further, Watson's testimony that Brazos receives no funds from the City of Waco, the State, or McLennan County shows that he understands the definition of public funds [4] and thus is not a legal conclusion. Watson's affidavit testimony is positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted by Blankenship.

 Blankenship objects to the affidavit of Ted Getterman as being opinion testimony, not based on personal knowledge, and conclusory. He objects to Getterman's statement that no public funds were used to support Brazos. Getterman states that he was the Mayor of Waco when ordinance 3266 was approved, and as such we find that he has personal knowledge regarding the ordinance and the City's role as the sponsor of Brazos. Thus, his statement that no public funds of the City of Waco were spent to support Brazos is not opinion testimony nor conclusory. Blankenship lodges the same objections to David Smith's affidavit and statement that Brazos was not created by the ordinance. As City Manager at the time the ordinance was passed, we find that Smith has personal knowledge of the purpose and effect of the ordinance. Smith's affidavit further states that Brazos was a pre-existing nonprofit corporation. We do not find that the statement is an opinion or conclusory. Blankenship makes the same objections to Milton

Wright's affidavit. Wright serves as the president of the Texas Guaranteed Student Loan Corporation, and his statement that his organization does not use State funds or political subdivision funds to pay Brazos for guaranteed loans is based on personal knowledge and is not based on opinion nor conclusory. For these reasons, we find that the court correctly overruled Blankenship's objections to the Brazos appellees' summary judgment evidence.

## SUMMARY JUDGMENT

In a summary judgment proceeding, the movant has the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). All evidence which favors the non-movant is taken as true. *Id.* at 548–49. Every reasonable inference is indulged and all doubts are resolved in favor of the non-movant. *Id.* at 549.

The Brazos appellees argued in their motion for summary judgment that they are not governmental bodies subject to the Public Information Act. They focused on subsection (x) which defines a governmental body as "the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds." TEX. GOV'T CODE ANN. § 552.003(1)(A)(x). The motion alleged that Brazos did not receive any public funds. Blankenship's response countered that Brazos did receive public funds and alternatively fell under subsection (iv) which defines a governmental body as "a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality." *Id.* § 552.003(1)(A)(iv).

## DELIBERATIVE BODY

In his brief, Blankenship argues that because the Brazos appellees did not address subsection (iv) in their motion, summary judgment should be precluded. The Brazos appellees as the movants have the burden to

4. *See* TEX. GOV'T CODE ANN. § 552.003(5) (Vernon Supp.1998).

prove that no genuine issue of material fact exists and they are entitled to summary judgment as a matter of law. *See Nixon,* 690 S.W.2d at 548. If they satisfy this burden, Blankenship's response must expressly present to the trial court the issues that would defeat the movants' right to summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). Blankenship must show the existence of a disputed fact issue to preclude summary judgment. Thus, we will examine the evidence in Blankenship's response.

■ Blankenship argues that Brazos is a governmental body because it is a deliberative body that has rulemaking or quasi-judicial power. He points to the fact that Brazos has the power to amend its by-laws, articles of incorporation, and "plan of doing business." These are powers that all corporations and nonprofit corporations possess. We conclude as a matter of law, however, that the facts asserted, assuming their truth, do not make Brazos a governmental body.

■ The Open Meetings Act uses the same definition of a governmental body that Blankenship argues applies to Brazos. Tex. Gov't Code Ann. § 551.001(3)(D) (Vernon 1994). A City of Austin grievance committee was held not to be subject to the Open Meetings Act under this definition. *City of Austin v. Evans,* 794 S.W.2d 78, 83–84 (Tex. App.—Austin 1990, no writ). The court found that a deliberative body makes binding determinations on disputes before it. *Id.* at 83. Because the grievance committee made only recommendations, it was not a deliberative body with rulemaking authority. Clearly, Brazos does not hear or make binding determinations on disputes. In *Evans,* the court defined quasi-judicial power as: (1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties. *Id.* We find that Brazos possesses none of those

powers. Having found that Brazos is not a deliberative body with rulemaking or quasi-judicial power, we need not discuss whether Brazos could be classified as a department, agency, or political subdivision of a county or municipality. Accordingly, Brazos is not a governmental body under subsection (iv).

## PUBLIC FUNDS

Brazos' basis for the declaratory judgment and summary judgment is that it is not a governmental body because it does not receive "public funds." "Public funds" are "funds of the state of Texas or of a governmental subdivision of the state." Tex. Gov't Code Ann. § 552.003(5). Brazos receives income from the sale of revenue bonds to private investors, investment earnings, repayments by loan borrowers, interest subsidy payments from the federal government, and claim payments from the Texas Guaranteed Student Loan Corporation ("TGSLC"). The parties do not dispute that income is received from these sources, but rather dispute the relationship between Brazos and the City of Waco and the nature of the TGSLC funds.

## REVENUE BONDS

■ It is undisputed that the City of Waco approves the issuance of Brazos' revenue bonds as required by section 53.47. However, the bonds state explicitly on their face that they "are special and limited obligations of [Brazos] and are not general, special, or moral obligations of the State of Texas, the City of Waco, Texas, or any other political subdivision of the State of Texas." The bonds are secured by and payable from net revenues, which are defined as all revenues derived by or for the account of [Brazos] with respect to student loans and investment income. The money received from the sale of the bonds comes from private investors, and the money used to pay the principal and interest on such bonds comes from the private revenue sources shown above. *See* Op. Tex. Att'y Gen. No. MW–85 (1979) (no public money involved in the issuance of revenue bonds by an industrial development corporation when the sale of bonds and principal and interest on such bonds come from private

sources). No funds of the State of Texas or the City of Waco are used to secure and pay off the bonds when they mature. The fact that the City approves the bond issuance does not amount to Brazos spending or being supported by public funds. As the City stated in the ordinance which requested Brazos to purchase student loans, the City was not providing any pecuniary support.

Blankenship refers to an attorney general opinion which states that a higher education authority is supported by public funds acquired through the issuance of revenue bonds. Op. Tex. Att'y Gen. No. MW–177 (1980). However, this opinion addresses a higher education authority created by a city pursuant to section 53.11. We have already decided that Brazos, as an existing nonprofit corporation, was not created under section 53.11. Thus, MW–177 does not apply to Brazos.

Blankenship correctly asserts that Brazos is not exempt from the Public Information Act merely by virtue of being a nonprofit organization. Nonprofit organizations which receive public funds such as city grants are governmental bodies because they receive public funds. However, the City's approval of Brazos' revenue bonds does not make Brazos an entity that spends or that is supported in whole or in part by public funds.

### TGSLC FUNDS

■ Blankenship also argues that the payments the TGSLC makes to Brazos constitute public funds. Brazos purchases some loans guaranteed by federal funds which are paid out by the TGSLC in accordance with federal law and regulations. The TGSLC guarantees loans made to eligible borrowers by eligible lenders as provided by the federal guaranteed student loan program established by the Higher Education Act of 1965. 20 U.S.C.A. §§ 1001—1146a; TEX. EDUC.CODE ANN. § 57.41 (Vernon 1996). Money received by the TGSLC is deposited in a reserve fund. "Notwithstanding any other provision of law, the reserve funds of the guaranty agencies, and any assets purchased with such reserve funds, regardless of who holds or controls the reserves or assets, shall be considered to be the property of the Unit-

ed States to be used in the operation of the program authorized by this part." 20 U.S.C.A. § 1072(g)(1) (West Supp.1998) (referring to the Federal Family Education Loan Program). The TGSLC establishes a guarantee account from the reserve funds to meet the claims of eligible lenders on defaulted loans. TEX. EDUC.CODE ANN. § 57.72(a) (Vernon 1996). Federal money is advanced to the TGSLC to establish and strengthen the reserve fund. *Id.* § 57.72(c). Further, state guaranty agencies such as the TGSLC are trustees who simply administer the federal funds that flow in and out of the state as part of the federal program. *See Ohio Student Loan Comm'n v. Cavazos,* 900 F.2d 894, 899 (6th Cir.1990). The TGSLC enters into agreements with the United States Department of Education for reinsurance of losses. *See* TEX. EDUC.CODE ANN. § 57.42 (Vernon 1996).

Brazos offered the affidavit of Milton Wright, president of the TGSLC, as summary judgment proof that Brazos does not receive public funds. Wright states that "no funds of the State of Texas or any political subdivision thereof are used by the TGSLC to make payments on guaranteed student loans such as those held by Brazos Higher Education Authority, Inc. The State of Texas does not guarantee payment of any student loans that Brazos Higher Educational authority has statutory authority to hold by virtue of § 53.47(e) of the Education Code."

Blankenship argues correctly that the TGSLC has been found to be a governmental body and thus, subject to the Public Information Act. Op. Tex. Att'y Gen. Nos. ORD–563 (1990), MW–295 (1981). These attorney general opinions found that the TGSLC is supported by public funds because it received a start-up appropriation of $1.5 million in 1979. *See* Act of May 24, 1979, 66th Leg., R.S., ch. 706, § 2, 1979 Tex. Gen. Laws 1711, 1717. The Legislature stated that: "the sum of $1.5 million is transferred from the federal lender's allowance funds of the Coordinating Board, Texas College and University System, to the corporation. The corporation shall use the funds to meet initial operating expenses, to establish the initial reserve necessary for loan guarantees, and to match federal funds

available under the Higher Education Act of 1965, as amended." *Id.* ORD–563 notes that the start-up appropriation for the TGSLC came from federal funds that had been deposited in the State treasury. Op. Tex. Att'y Gen. No. ORD–563. Federal funds deposited in the state treasury become state funds. *Id.* Blankenship contends that because the TGSLC received an initial appropriation of state funds, Brazos receives public funds. However, there is no evidence to support that contention. Wright's affidavit states that no State funds are transferred to Brazos. Brazos purchases student loans that are federally guaranteed under the Higher Education Act of 1965, and the TGSLC simply acts as a trustee of the federal funds used to guarantee the loans. The guarantee account of the TGSLC is comprised of reserve funds and is not akin to the state treasury. The reserve funds the federal government advances to the TGSLC are clearly federal funds and do not change character by virtue of being held by the TGSLC. *See* 20 U.S.C.A. § 1072(g)(1). For these reasons, we conclude that Brazos receives no public funds from the State of Texas through its relationship with the TGSLC.

██ We are also not persuaded that Brazos admits to being a governmental body because it made a request for an attorney general opinion. *See* Tex. Gov't.Code Ann. § 552.301 (Vernon Supp.1998). The attorney general has addressed numerous requests to determine whether an entity is a governmental body under the Public Information Act. *See, e.g.,* Op. Tex. Att'y Gen. Nos. ORD–621 (1993), ORD–602 (1992), ORD–601 (1992), ORD–563 (1990), ORD–509 (1988), JM–821 (1987), JM–120 (1983). All these opinions discuss whether an entity is a governmental body under the definitions in the Public Information Act. None of the opinions state that by virtue of a request for an opinion, an entity admits that it is a governmental body. The numerous opinions on the subject reflect that the determination of whether an entity

is a governmental body requires an analysis of the facts surrounding each entity.

Blankenship argues that Brazos Service Corp. is a governmental body by virtue of being an agent of Brazos. Having found that Brazos is not a deliberative body with rule-making or quasi-judicial power and does not receive public funds, we find that neither of the Brazos appellees are governmental bodies. Thus, the Public Information Act does not apply to them. The Brazos appellees have established that no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *See Nixon,* 690 S.W.2d at 548. Accordingly, we find that the court was correct in granting summary judgment in favor of the Brazos appellees.[5] We overrule the first issue presented.

## MURRAY WATSON

In his third issue, Blankenship asserts that the court erred in granting summary judgment in favor of Murray Watson and in not issuing a writ of mandamus to compel Watson to provide the requested information. Blankenship also argues that the court erred in not awarding him attorney's fees and not submitting the attorney's fee issue to a jury.

A suit for mandamus may be filed to compel a governmental body to make requested information available for public inspection. *See* Tex. Gov't.Code Ann. § 552.321. Having found that the Brazos appellees are not governmental bodies subject to the Public Information Act, we find that Murray Watson, as custodian of records, has no duty to provide the requested information. Watson has established that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See Nixon,* 690 S.W.2d at 548. Thus, the court did not err in granting summary judgment in favor of Watson.[6] We overrule the third issue presented.

## CITY OF WACO/NANA CORNWELL

Blankenship argues in his second issue that the court erred in granting summary

---

**5.** Because the Brazos appellees are not subject to the Public Information Act, we need not address Blankenship's issue regarding attorney's fees.

**6.** Because Watson, as custodian of records for Brazos, is not subject to the Public Information Act, we need not address the attorney's fees issue.

judgment in favor of the City of Waco and Nana Cornwell. He contends that the court erred in impliedly finding that the City and Cornwell had produced all documents to which they had access in connection with his request. Further, he asserts that the City and Cornwell failed to meet their burden of proof when they failed to produce any evidence that they had produced all documents to which they had access with respect to the request. According to Blankenship, the court erred in not issuing a writ of mandamus against Cornwell compelling her to produce the requested information. Blankenship also argues that the court should have awarded him attorney's fees and erred by not submitting the attorney's fee issue to a jury.

The City as a municipal governing body constitutes a governmental body subject to the Public Information Act. *See* TEX. GOV'T.CODE ANN. § 552.003(1)(A)(iii). The City must make "public information" available to the public. *Id.* § 552.021. " 'Public information' means information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business: (1) by a governmental body; or (2) for a governmental body and the governmental body owns the information or has a right of access to it." *Id.* § 552.002(a)(1), (2).

The City's summary judgment evidence consists of one affidavit which establishes that the City "had no documents which were responsive" to Blankenship's first request and "produced the documents in its possession" that were responsive to his second request. The City failed to address whether it has a "right of access" to the documents as contemplated by section 552.002. Thus, the court granted a summary judgment on a ground that was neither pled in the summary judgment motion nor proven in the City's summary judgment evidence. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342–43 (Tex.1993).

As we previously stated, the Texas Legislature amended the Higher Education Act in 1975 to permit nonprofit corporations to exercise the powers of a Higher Education Authority *at the request of a city.* The Waco City Council took advantage of newly-enacted section 53.47(e) and authorized Brazos to exercise these powers to increase the availability of student loans. Section 53.47(e) provides in part that "the governing body of a city or cities may request a nonprofit corporation organized to exercise the powers enumerated and provided in this section *for and on its behalf.* If the corporation agrees to exercise such powers, *the directors of such corporation shall thereafter be appointed by and be subject to removal by the governing body of the city or cities. . . .*" TEX. EDUC. CODE ANN. § 53.47(e) (emphasis added). Brazos' authority to issue bonds was given by the City, and Brazos is under the control of the City in that the City must approve the issuance of revenue bonds and appoint the board of directors. Whether this relationship gives the City access to the requested documents is a question not answered by the summary judgment evidence.

The requirements for documents to be "public information" under section 552.002(a)(2) are two-fold. To be "public information," documents must be "collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business for a governmental body and the governmental body has a right of access to it." However, records which a public entity is entitled to examine are "maintained" for that public entity within the meaning of section 552.002(a)(2). *See* Op. Tex. Att'y Gen. No. ORD–462 (1987).

■ To discharge its responsibility under the statute to appoint Brazos' directors and to approve the issuance of bonds, the City arguably has the right to see all Brazos' documents relating to its organizational structure and the issuance of bonds. If so, the City may have had a duty to obtain the documents and furnish them to Blankenship.

For these reasons, we conclude that a fact question remains on the issue of whether the City has a right of access to documents maintained by Brazos. Thus, the court erred in granting a summary judgment in favor of the City and Cornwell. Accordingly, we sustain

**364**

Blankenship's second issue in part.[7]

## CONCLUSION

We have determined that the court was correct in finding that the Brazos appellees are not governmental bodies and therefore not subject to the Public Information Act. Because the Brazos appellees are not governmental bodies, a writ of mandamus will not issue to compel Watson to provide the requested information. However, we have also determined that a fact issue remains on the question of whether the City has a right of access to records in the possession of Brazos. Accordingly, we will affirm the judgment in part and reverse and remand the judgment in part.

We affirm the portion of the summary judgment granted in favor of the Brazos appellees and Murray Watson, Jr. We reverse the portion of the summary judgment granted in favor of the City of Waco and Nana Cornwell, sever, and remand that portion of this cause to the trial court for further proceedings consistent with this opinion. *See Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 823 (Tex.1985); *Bohannan v. Texas Bd. of Crim. Justice,* 942 S.W.2d 113, 120 (Tex.App.—Austin 1997, writ denied); Tex.R.App. P. 43.3.

---

7. Because we are remanding this cause to the court below and because a fact issue remains on the question of access, we need not address Blankenship's mandamus and attorney's fee contentions.