

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-041-CV**

PERDUE, BRACKETT, FLORES, UTT &                    APPELLANTS
BURNS, A JOINT VENTURE; LUTHER W.
"LUKE" ELLIS, C. DAVID FIELDER, AND
ELIZABETH PARMER

V.

LINEBARGER, GOGGAN, BLAIR, SAMPSON &               APPELLEES
MEEKS, L.L.P. AND BRYAN EPPSTEIN & CO.

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

When one law firm, seeking a contract to provide legal services to a city, makes allegedly defamatory statements to the city council about the performance of a competing law firm, are the statements absolutely privileged under the doctrine of quasi-judicial immunity? We answer "yes," and we affirm the trial court's summary judgment.

## Background

Appellants Ellis, Fielder, and Parmer are members of Appellant Perdue, Brackett, Flores, Utt & Burns, a joint venture ("Joint Venture"). The Joint Venture and Appellee Linebarger, Goggan, Blair & Sampson, LLP ("Linebarger") are competing law firms that collect delinquent ad valorem property taxes for taxing entities across Texas. Appellee Bryan Eppstein & Co. is a political consulting firm hired by Linebarger.

In 2002, the Joint Venture entered into a three-year contract with the City of Fort Worth ("the City") to collect delinquent ad valorem property taxes. The contract provided the City with the option to exercise two one-year extensions. In October 2004, the Joint Venture contacted City staff about exercising the extension option. Internal City reports indicate that City staff were pleased with the Joint Venture's performance and rate of collection during the contract's three-year primary term. The City manager informed the mayor and City council in writing that he intended to exercise the extension option.

The extension option was set on the council's executive session agenda for November 30, 2004. According to the Joint Venture, after the meeting, City staff told representatives of the Joint Venture that the City was going to exercise the option in the Joint Venture's favor.

The extension option was again set on the council's executive session agenda for December 7, 2004; the record does not explain why the option was set on the agenda a second time. The session was closed to the public. That day, apparently before or during the meeting, Eppstein delivered a memo to City staff on behalf of Linebarger that criticized the Joint Venture's performance, accused the Joint Venture of providing false information to the council, and claimed that the Joint Venture had cost the city over $700,000 in uncollected tax revenue. The memo is the genesis of the Joint Venture's claims against Linebarger and Eppstein.

Rather than exercise the one-year renewal option, the City council voted "to continue the contract month by month until an audit of the contract could be completed." The auditor presented his report on March 24, 2005, and criticized the Joint Venture for its handling of certain bankruptcy cases.

After receiving the auditor's report, the City requested new proposals for the tax collection contract. Both the Joint Venture and Linebarger submitted proposals, and both parties made presentations to the City council at an open meeting in May 2005. The Joint Venture alleges that Linebarger made additional defamatory statements at the open meeting. The City ultimately awarded the contract to Linebarger.

The Joint Venture sued Linebarger and Eppstein for defamation, tortious interference, business disparagement, and conspiracy, alleging that statements Linebarger and Eppstein made in the December 2004 memo and during the May 2005 council meeting were false and defamatory and had caused the council to not exercise its extension option in the Joint Venture's favor. Linebarger and Eppstein moved for summary judgment on, among other grounds, the affirmative defense that the alleged defamatory statements were absolutely privileged under the doctrine of quasi-judicial immunity. The trial court granted summary judgment in favor of Linebarger and Eppstein, and the Joint Venture filed this appeal.

**Discussion**

The key question in this case is whether Linebarger's allegedly defamatory statements in the December 2004 memo and before the City council in May 2005 are absolutely privileged under the doctrine of quasi-judicial immunity. An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even though the communication is false and was made or published with express malice. *5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 256 (Tex. App.—Fort Worth 2004, pet. denied); *see Bird v. W.C.W.,* 868 S.W.2d 767, 771–72 (Tex. 1994); *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982);

4

*Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909, 912 (1942). This doctrine has been firmly established in Texas for well over one hundred years. *5-State Helicopters*, 146 S.W.3d at 256–57; *see Runge v. Franklin,* 72 Tex. 585, 10 S.W. 721, 723 (1889). The absolute privilege applies to communications related to both proposed and existing judicial and quasi-judicial proceedings. *James,* 637 S.W.2d at 916–17; *Reagan,* 166 S.W.2d at 912–13; *5-State Helicopters, Inc.*, 146 S.W.3d at 257; *Randolph v. Jackson Walker L.L.P.,* 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Attaya v. Shoukfeh,* 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, pet denied).

The public policy behind the application of the absolute privilege to judicial proceedings is that the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation. *James,* 637 S.W.2d at 917; *5-State Helicopters, Inc.*, 146 S.W.3d at 257. Similarly, the rationale for extending the absolute privilege to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress "without the fear of being called to answer in damages" and that the administration of justice will be better served if witnesses are not deterred by the threat of lawsuits. *5-State Helicopters, Inc.*, 146 S.W.3d at 257; *Attaya,* 962 S.W.2d at 239

5

(quoting *Parker v. Holbrook,* 647 S.W.2d 692, 695 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)). The absolute privilege is intended to protect the integrity of the process and ensure that the quasi-judicial decision-making body gets the information it needs. *5-State Helicopters, Inc.*, 146 S.W.3d at 257; *Attaya,* 962 S.W.2d at 239.

Two requirements must be met in order for the absolute privilege to apply: (1) the governmental entity must have the power and authority to investigate and decide the issue—that is, quasi-judicial power—and (2) the communication must bear some relationship to a pending or proposed quasi-judicial proceeding. *Clark v. Jenkins*, 248 S.W.3d 418, 431 (Tex. App.—Amarillo 2008, pet. denied) (citing *5-State Helicopters, Inc.*, 146 S.W.3d at 259; *Bennett v. Computer Assocs. Int'l, Inc.*, 932 S.W.2d 197, 201 (Tex. App.—Amarillo 1996, writ denied)); *Attaya,* 962 S.W.2d at 239; *Hernandez v. Hayes,* 931 S.W.2d 648, 651 (Tex. App.—San Antonio 1996, writ denied); *McAfee v. Feller,* 452 S.W.2d 56, 57–58 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ). Even communications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide. *Reagan,* 166 S.W.2d at 913; *5-State Helicopters, Inc.*, 146 S.W.3d at 257*; see also Attaya,* 962 S.W.2d at 238–39; *Rose v. First Am. Title Ins. Co.,* 907 S.W.2d 639,

6

641–42 (Tex. App.—Corpus Christi 1995, no writ); *Putter v. Anderson,* 601 S.W.2d 73, 75, 77 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (all holding that private citizen's complaint may be first step in quasi-judicial proceeding if governmental entity has duty or authority to investigate and resolve same). Such communications stand "on the same footing [regarding] libel as do communications made in a court of justice." *Reagan,* 166 S.W.2d at 913; *5-State Helicopters, Inc.*, 146 S.W.3d at 257.

But "[a]ll communications to public officials are not absolutely privileged." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987). The absolute privilege attaches only in situations that "involve the administration of the functions of the branches of government." *Id.* Initial communications "to a public officer . . . who is authorized or privileged to take action" are subject to only a qualified privilege, not absolute immunity. *Id.*; *Clark*, 248 S.W.3d at 432. For example, in *Hurlbut*, the supreme court held that criminal allegations made to an assistant attorney general were conditionally, not absolutely, privileged. 749 S.W.2d at 767–68. Likewise, in *Clark*, the Amarillo court held that a communication encouraging a congressman to investigate alleged civil rights violations was not absolutely privileged because the communication was not made to the congressman as part of a legislative proceeding and because

7

the congressman lacked the power to conduct a formal investigation or grant the ultimate relief sought by the declarant. 248 S.W.3d at 433.

A governmental entity's power to decide a controversy presented by an allegedly defamatory statement is a key factor in determining whether the defamatory statement relates to the exercise of quasi-judicial power. The defamatory statements in *Hurlbut* and *Clark* did not relate to the exercise of quasi-judicial power because the persons to whom the declarants made the defamatory statements—the assistant attorney general in *Hurlbut* and the congressman in *Clark*—did not have the power to decide the controversies presented by the statements. *See Hurlbut*, 749 S.W.2d at 767; *Clark*, 248 S.W.3d at 433. On the other hand, the supreme court held in *Reagan* that the Board of Insurance Commissioners exercised quasi-judicial power when it decided whether to issue an insurance sales license to an applicant. 166 S.W.2d at 913. Similarly, a police department's internal affairs division exercised quasi-judicial power when addressing a complaint made by a citizen against an officer because the division had the power to determine whether the officer should be disciplined. *Putter*, 601 S.W.2d at 77; *see 5-State Helicopters, Inc.,* 146 S.W.3d at 258 ("Because the FAA had the authority to both initiate the investigation . . . *and dispose of* appellants' violation administratively without legal enforcement action, the FAA's actions . . .

8

constituted a quasi-judicial proceeding." (Emphasis added)); *see also Shanks v. Allied Signal, Inc.*, 169 F.3d 988, 994 (5th Cir. 1999) ("Texas courts have also denied absolute immunity where the challenged communications are made to agencies that issue merely recommendations or preliminary findings.").

Whether an alleged defamatory statement is related to a proposed or existing judicial or quasi-judicial proceeding, and is therefore absolutely privileged, is a question of law. *Reagan,* 166 S.W.2d at 912; *5-State Helicopters, Inc.*, 146 S.W.3d at 257; *Randolph,* 29 S.W.3d at 278; *Thomas v. Bracey,* 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no pet.). All doubts should be resolved in favor of the communication's relation to the proceeding. *5-State Helicopters, Inc.*, 146 S.W.3d at 257; *Randolph,* 29 S.W.3d at 278; *Thomas,* 940 S.W.2d at 343.

1.    **Does the City council possess quasi-judicial power**?

The first question is whether the City council possesses quasi-judicial power, in other words, whether the council has the authority to hear and decide the matters coming before it or to redress the grievances of which it takes cognizance. *See Clark*, 248 S.W.3d at 431; *5-State Helicopters, Inc.*, 146 S.W.3d at 257.   Texas courts have recognized six powers relevant to the determination of whether a body possesses quasi-judicial power:

(1) the power to exercise judgment and discretion;

9

(2) the power to hear and determine or to ascertain facts and decide;

(3) the power to make binding orders and judgments;

(4) the power to affect the personal or property rights of private persons;

(5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and

(6) the power to enforce decisions or impose penalties.

*Fiske v. City of Dallas*, 220 S.W.3d 547, 551 (Tex. App.—Texarkana 2007, no pet.); *Alejandro v. Bell*, 84 S.W.3d 383, 391 (Tex. App.—Corpus Christi 2002, no pet.); *Blankenship v. Brazos Higher Educ. Auth.*, 975 S.W.2d 353, 360 (Tex. App.—Waco 1998, pet. denied); *Village of Bayou Vista v. Glaskox*, 899 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1995, no writ) (quoting *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)).

The City code explicitly confers two of those powers on the City council—the power to hear and ascertain facts and the power to subpoena and examine witnesses. Fort Worth, Tex. Ordinances no. 1748, § 1 (1933) (captioned, "Council and Committee Authority to Investigate Department and Subpoena Witnesses"). Germane to this appeal, the Texas Tax Code confers on a taxing unit like the City the power to "determine who represents the unit

10

to enforce the collection of delinquent taxes."  Tex. Tax Code Ann. § 6.30(b) (Vernon 2008).[1]  The power to "determine who represents the unit" implicates at least two more of the powers enumerated above: the power to exercise judgment and discretion and the power to make binding orders.  *Id.*  Local government code section 54.001 confers yet another power on the council, the power to enforce and impose penalties: "The governing body of a municipality may enforce each rule, ordinance, or police regulation of the municipality and may punish a violation of a rule, ordinance, or police regulation.  Tex. Loc. Gov't Code Ann. § 54.001(a) (Vernon 2008).  Finally, though not directly relevant to the issues in this case, the council has the power to affect the personal or property rights of private persons.  *See, e.g.*, *id*. § 251.001(a) (Vernon 2005) (providing that municipality may exercise right of eminent domain by condemning private property for public use); *see also City of Carrollton v. Singer*, 232 S.W.3d 790, 797 (Tex. App.—Fort Worth 2007, pet. denied) (discussing municipality's power to condemn private property).  Thus, all six powers relevant to the determination of whether a body's proceedings

---

[1] "The governing body of a taxing unit other than a county may determine who represents the unit to enforce the collection of delinquent taxes."  *Id.*

11

are quasi-judicial abide in the City council. We therefore conclude and hold that the City council possesses quasi-judicial power.

**2.     Did the alleged defamatory statements relate to an existing or proposed quasi-judicial proceeding?**

The second question is whether Linebarger's and Eppstein's alleged defamatory statements related to an existing or proposed quasi-judicial proceeding. *See Clark*, 248 S.W.3d at 431; *5-State Helicopters, Inc.*, 146 S.W.3d at 257. Stated differently, was the City exercising its quasi-judicial power when it deliberated about whether to extend the Joint Venture's contract and, later, about whether to award the new contract to the Joint Venture or Linebarger?

The council's deliberations implicated several of the quasi-judicial powers enumerated above. *See Fiske*, 220 S.W.3d at 551; *Alejandro*, 84 S.W.3d at 391. Before ultimately awarding the contract to Linebarger, the City council exercised its judgment and discretion by deciding not to extend the Joint Venture's contract; ordered an investigation—the audit—and heard argument from the parties; decided to whom to award the new contract; and made a binding decision to award the contract to Linebarger.

Of these powers, the most significant is the council's power to decide the controversy related to the alleged defamatory statements. The controversy

12

related to the alleged defamatory statements was the Joint Venture's performance under the contract and whether the counsel should extend the contract. The council's power to decide the controversy makes this case like *Reagan* and *5-State Helicopters, Inc.* — where the governmental entity with the power to decide and resolve a controversy was deemed to have exercised quasi-judicial power — and unlike *Hurlbut* and *Clark* — where the governmental entity did not have the power to decide the controversy. *Compare Reagan,* 166 S.W.2d at 913, *and 5-State Helicopters, Inc.,* 146 S.W.3d at 258, *with Hurlbut*, 749 S.W.2d at 767, *and Clark*, 248 S.W.3d at 433.

The Joint Venture argues that when analyzing whether the City council exercised quasi-judicial power, there is a difference between the council's determining to award or extend a contract and the council's enacting or interpreting an ordinance. The latter, argues the Joint Venture, is the exercise of quasi-judicial power, but the former is not. We disagree. While awarding contracts and enacting ordinances may implicate different powers or the same powers to different extents, both activities potentially fall within the six enumerated powers that determine whether a body's proceedings are quasi-judicial. *See Fiske*, 220 S.W.3d at 551; *Alejandro*, 84 S.W.3d at 391; *Blankenship*, 975 S.W.2d at 360. More specifically, as described above, the council's actions with regard to the tax collection contract in this case

13

implicated its quasi-judicial powers, especially the power to decide and resolve the controversy related to the allegedly defamatory statements.

Because the City council exercised quasi-judicial power in its deliberations on whether to extend the Joint Venture's contract, we hold that the proceeding in question was quasi-judicial.

The final question is whether the allegedly defamatory communications bear some relationship to the pending or proposed quasi-judicial proceeding. *See Clark*, 248 S.W.3d at 431. When Linebarger and Eppstein presented their memorandum to City staff on December 7, 2004, City staff and the City council had already begun the process of reviewing the Joint Venture's performance under the contract and deliberating whether to exercise its option to extend the contract. This process began no later than October 2004, when the Joint Venture contacted City staff about exercising the extension option, and continued through November 30, when the option was first set on the City council's executive session agenda. Thus, the proceeding was well under way by the time Linebarger and Eppstein published the first of the alleged defamatory statements on December 7. Further, all of the allegedly defamatory statements identified by the Joint Venture relate to the quality of the services provided by the Joint Venture. Even if there were a doubt as to the communications' relevance to the City council's quasi-judicial proceeding, we

14

would be required to resolve it in favor of—not against—a relation to the proceeding. *See 5-State Helicopter, Inc.*, 146 S.W.3d at 259. Therefore, we hold that the alleged defamatory statements bore some relationship to the quasi-judicial proceeding pending before the City council.

**Conclusion**

Having concluded that Linebarger's allegedly defamatory statements to the council related to a proceeding in which the council exercised its quasi-judicial power, we hold that the statements are absolutely privileged, regardless of the their truth, falsity, or malicious nature. *See id*. Because the Joint Venture's claims for defamation, tortious interference, business disparagement, and conspiracy to commit these torts are for defamation-type damages based on the allegedly defamatory statements, the absolute privilege bars all of their claims. We therefore hold that the trial court did not err by granting a traditional summary judgment in favor of Linebarger and Eppstein on the Joint Venture's claims. We overrule the Joint Venture's first issue.

Having overruled the Joint Venture's first issue, we do not reach its second, third, and fourth issues, in which it argues that the trial court erred by granting Linebarger's and Eppstein's no-evidence motions for summary judgment, by denying the production of documents to the Joint Venture, and by placing the burden on the Joint Venture to prove the falsity of Linebarger's

15

allegedly defamatory statements.[2]   We therefore affirm the trial court's

summary judgment.


ANNE GARDNER
JUSTICE

PANEL:   CAYCE, C.J.; GARDNER, J.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  May 7, 2009

---

[2] Nor do we reach the Joint Venture's argument on its first issue that the trial court misapplied the *Noerr-Pennington* doctrine, which Linebarger and Eppstein argue provides an independent basis for immunity.  *See  E. R.R. President's Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585 (1965).

16