Nabil ATTAYA, M.D., Appellant,

v.

Fawwaz M. SHOUKFEH, M.D., Appellee.

Nos. 07–96–0264–CV, 07–96–0265–CV.

Court of Appeals of Texas,
Amarillo.

Jan. 30, 1998.

Rehearing Overruled March 13, 1998.

Don C. Dennis, Karla K. Carlson, Lubbock, for appellant.

Aubrey J. Fouts, Lubbock, Joe R. Greenhill, Jr., Austin, Richard A. Simpson, Andrew L. Shapiro, Washington, DC, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.

DODSON, Justice.

In the trial court, Fawwaz M. Shoukfeh, M.D. sued Nabil Attaya, M.D. for furnishing information against him to the Texas State Board of Medical Examiners in bad faith, for malicious prosecution, abuse of process, defamation, business disparagement, intentional infliction of emotional distress and battery. Attaya claimed absolute quasi judicial immunity. The trial court granted Attaya's motion for directed verdict on all of Shoukfeh's causes of actions except the bad faith and battery actions which were submitted to the jury.

After the jury's verdict (which was favorable to Shoukfeh), the trial court rendered judgment against Attaya in the sum of $125,-000.00 for actual damages, and awarded no exemplary damages. Also, the trial court imposed sanctions against Attaya for alleged discovery abuses. Both parties appealed from the judgment, and Attaya appealed from the discovery sanctions. We reverse the trial court's judgment, render judgment against Shoukfeh on all of his claims against Attaya, and set aside all sanction orders against Attaya.

Attaya and Shoukfeh are practicing cardiologists in Lubbock, Texas. Both were staff members at a Lubbock hospital. Shoukfeh asserts that the animosity between he and Attaya relates to Shoukfeh's service on a peer review committee which caused Attaya's physician privileges to be revoked at the hospital in 1982. Shoukfeh was one of seven members on the committee. After his privileges were revoked, Attaya brought an action against the hospital. Shortly thereafter, the suit was settled favorable to Attaya and his privileges were reinstated.

Some four years later, in October of 1986, Attaya, believing that Shoukfeh was performing questionable procedures, contacted the Texas Board of Medical Examiners (the Board). On November 7, Attaya met with Dan Best, a board investigator, and provided Best with medical records of the questionable procedures and copies of malpractice complaints filed against Shoukfeh. As a result of the reporting of this information to the Board, the Board began an investigation of Shoukfeh, which lasted approximately four years, and resulted in the Board's Hearing Division filing a complaint against Shoukfeh for violations of the Texas Medical Practice Act. After a hearing, the Board's hearing examiner determined that Shoukfeh had violated certain provisions of the Texas Medical Practice Act, and recommended to the Board that Shoukfeh receive a public reprimand. The full Board, after a hearing and without comment, dismissed the complaint against Shoukfeh. After the Board dismissed the complaint, Shoukfeh brought this action.

### Attaya's Appeal

First, we will address Attaya's appeal. Attaya brings twenty points of error. By points three, four and nine, Attaya presents his primary contention that Shoukfeh has no cause of action against him for furnishing information to the Board because his communications with the Board concerning Shoukfeh were absolutely privileged, as statements made in connection with a judicial or quasi-judicial proceeding. In essence, Attaya claims that he is absolutely immune from liability for statements made to the Board concerning Shoukfeh. We agree.

### Absolute Immunity Doctrine

■ The absolute privilege (*i.e.*, immunity) doctrine has been firmly established in the Texas legal system for over one hundred years. *See A.H. Belo & Co. v. Wren*, 63 Tex. 686 (1884); *Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721 (1889). This absolute immunity doctrine (which has been routinely extended to judicial proceedings) means that any statement made in the trial of any case by anyone cannot constitute the basis for a defamation or any other civil action. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 110, 166 S.W.2d 909, 912 (1942); *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982); *Aransas Harbor Terminal Ry. Co. v. Taber*, 235 S.W. 841, 842 (Tex.1921).

In *Reagan*, the court defined absolute privilege as "any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel." The court further stated that "the falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case."

The absolute privilege (*i.e.*, immunity) has been extended to statements made in quasi-judicial proceedings before governmental executive officers, boards and commissions which exercise quasi-judicial powers. *Reagan*, 140 Tex. at 110, 166 S.W.2d at 912; *Lane v. Port Terminal R.R. Ass'n.*, 821 S.W.2d 623, 625 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (where the court determined that absolute immunity doctrine applied to the National Railroad Labor Board, Special Board of Adjustment proceedings); *Aransas Harbor Terminal Ry. Co. v. Taber*, 235 S.W. at 843 (where it was determined that the absolute privilege applied to Railroad Commission proceedings); *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 143–44 (Tex.App.—Corpus Christi 1986, writ denied) (where court determined privilege applied to proceedings before town's board of aldermen).

In *McAfee v. Feller*, 452 S.W.2d 56, 57–58 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ), the court determined that for proceedings before a governmental board to be considered quasi-judicial, the board must have authority to redress grievances of which it takes cognizance. In *Ramirez v. Texas State Bd. Of Medical Examiners*, 927 S.W.2d 770, 773 (Tex.App.—Austin 1996, no writ), the court determined the Texas State Board of Medical Examiners to be a body that determines rights, duties, or privileges of persons and therefore acts in a judicial or quasi-judicial capacity.

As stated in *Hernandez v. Hayes*, 931 S.W.2d 648, 651 (Tex.App.—San Antonio 1996, writ denied), the rationale for extending an absolute privilege to quasi-judicial proceedings rests in the public policy consideration that every citizen should have the unqualified right to appeal to the agencies of government for redress "without the fear of being called to answer in damages" and that the administration of justice will be better served if "witnesses are not deterred by fear of lawsuits." *See Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd. n.r.e.).

The absolute privilege is intended to protect the integrity of the process itself and to insure that the decision-making body gets the information it needs. Even though the speaker may not deserve the privilege, nevertheless, the law grants the privilege to protect the integrity of the process. *See Reagan v. Guardian Life Ins. Co.*, 140 Tex. at 110, 166 S.W.2d at 912 (false statements uttered with express malice remain privileged).

Shoukfeh claims his bad faith action submitted to the jury was authorized by Articles 4495(b), §§ 5.06(m) and (t)(1). Subsect (m) provides in part that: "[a] person, . . . that *without malice* . . . furnishes records, information, or assistance 'to . . . *the board* is *immune from any civil liability* arising from such action." (Emphasis added.) Subsection (t)(1) provides: "[the] following persons are *immune* from *civil liability*: (a) a person reporting to or furnishing information to . . . *the board* in *good faith*"; (emphasis added.) Consequently, Shoukfeh argues that since immunity is conditioned on "without malice" in one instance and "good faith" in the other, the statute implicitly authorizes a cause of action for either "bad faith" or "malice." We disagree.

■ In *Cole v. Huntsville Memorial Hospital*, 920 S.W.2d 364, 373 (Tex.App.—Houston [1st Dist.] 1996, writ denied), when considering similar provisions of the act the court determined that the Medical Practice Act does not create a private cause of action against the actor. Likewise, we conclude that subsections (m) and (t)(1) of the Medical Practice Act does not afford Shoukfeh a private cause of action against Attaya. Further, the qualified immunity provisions of the Medical Practice Act does not repeal, destroy, diminish or supercede common law absolute immunity. Qualified immunity

alone, whether by statute or common law, does not adequately protect the party informant's interest or promote the board's government function. In this connection, absolute immunity is necessary to encourage parties to fully utilize the governmental grievance process without fear or reprisal. Likewise, the mere threat of retaliatory lawsuits, however meritless, is sufficient to discourage physicians from complying with mandatory provisions of section 5.06(d) (which requires licensed physicians, medical students and other designated persons to report relevant information to the Board on acts of physicians whose actions constitute a threat to the public welfare through the practice of medicine). This case illustrates the futility of such reporting in the absence of absolute immunity. In this context, a qualified privilege is tantamount to no privilege at all. *See Hernandez v. Hayes,* 931 S.W.2d at 654.

Consequently, we conclude that all of Attaya's conduct and actions with the Board are absolutely immune from civil liability and all of Shoukfeh's actions against Attaya must fail.[1] In this regard, Attaya's immunity extends to all perceived torts or other causes of action, whether plead or not plead by Shoukfeh and arising from Attaya's action, conduct and communication with the Board. *See Hernandez v. Hayes,* 931 S.W.2d at 654. Attaya's third, fourth and ninth points of error are sustained.

### Battery

Attaya's assertion in connection with point of error fifteen is that there was no evidence that Shoukfeh suffered any compensable harm as a result of Attaya's alleged battery and that, therefore, there was no evidence to support any award of damages for mental anguish based on battery.

The record shows that after Shoukfeh filed suit against Attaya, their paths crossed at an area undesignated in the record. Shoukfeh claimed Attaya cursed at him in Arabic and threatened him and his family. A few days later, the two again confronted each other in the parking lot of a mosque, where words were again exchanged. This brief encounter resulted in a scuffle in which Attaya struck Shoukfeh on the shoulder and cut Shoukfeh's hand with a set of car keys. The record does not reveal any other action in connection with the incident.

We agree with Attaya that there is no evidence in the record that would establish that Shoukfeh suffered any mental suffering or anguish as a result of the battery. The only evidence in the record of the battery is Shoukfeh's testimony. At trial, Shoukfeh testified that, "[H]e (Attaya) hit me on the right shoulder, and I defended myself. Then he has a key in his hand, and he did cut my hand." This testimony does not establish in any way that Shoukfeh suffered any mental anguish as a result of the battery. Accordingly, we conclude that there is no evidence in the record to support an award of damages for mental anguish as a result of the alleged battery. In this connection, we further point out that there is no evidence establishing any type of damage as a result of the battery (*i.e.,* there is no evidence of mental anguish, pain and suffering, any medical treatment, medical expenses, loss of income, or any other compensable expenses caused by the battery). Point of error fifteen is sustained.

### Discovery Sanctions

By points of error eighteen, nineteen, and twenty, Attaya challenges the trial court's imposition of discovery sanctions against him. In essence, he claims that because his actions with the Board were absolutely immune from civil liability, the trial court should not have imposed sanctions upon him. We agree.

The record shows that in July 1991, Shoukfeh served requests for admissions on Attaya, requesting that Attaya admit to certain acts of contact and complaints with the Board. Attaya denied these requests. Thereafter, in December 1992, Shoukfeh again requested that Attaya admit certain acts of contact and complaints with the Board and for a description of those acts and complaints. Attaya objected to each request

---

1. Shoukfeh's battery action is a separate matter which we subsequently address in this opinion.

for admission and interrogatory on the ground that each request and interrogatory sought information that is immune under the qualified immunity provisions of the Medical Practice Act article 4495(b), §§ 4.05(d), 5.06(s)(3), 5.06(m) and under absolute immunity as stated in *Reagan v. Guardian Life Ins. Co.*, 140 Tex. at 110, 166 S.W.2d at 912. After a hearing, the trial court overruled Attaya's objections and ordered him to make full and complete responses to the requests. Although there were further proceedings concerning these requests for admission and interrogatories, the record is unclear concerning whether the request and interrogatories were answered. Nevertheless, Attaya's actions, if any, concerning these requests and interrogatories were not a ground for the sanction orders.

By his August 1993 motion, Shoukfeh requested the trial court to sanction Attaya for abuse of the discovery process because, in response to the July 1991 request for admissions, Attaya falsely denied that he had communicated with the Board regarding Shoukfeh's care of eighteen patients. The trial court granted the motion and ordered Attaya to pay Shoukfeh $10,000 for attorneys' fees caused by Attaya's discovery abuse. The court further ordered Attaya to perform forty hours of uncompensated community service.

The common law absolute immunity from civil liability afforded Attaya applied to the discovery process. Otherwise, absolute immunity is ineffectual. As in this instance, the trial court may not accomplish indirectly that which it cannot do directly (*i.e.*, in effect, award the other party damages where there is no civil liability).

In this context, absolute immunity means absolute (*i.e.*, pure, perfect, complete, whole). As we stated above, the absolute immunity afforded Attaya extends to false or malicious statements. *See Reagan v. Guardian Life Ins. Co.*, 140 Tex. at 110, 166 S.W.2d at 912. In legal essence, when a party files causes of action on actions and conduct which are absolutely immune, as in this instance, and vigorously pursues costly discovery, the party does so at his own peril. He cannot look to the immune party for any form of compensa-

tion. Attaya's eighteenth, nineteenth and twentieth points of error are sustained.

## Shoukfeh's Cross-Points

Shoukfeh brings five cross-points in his brief filed in Attaya's appeal. In his first four cross-points, he claims the trial court erred (1) by refusing to submit his defamation action; (2) by refusing to grant him a new trial for failure to submit his defamation action; (3) by refusing to submit his action for malicious prosecution; and (4) by failing to grant him a new trial because the jury's failure to award him damages for *harm to his reputation*. As we have stated above, Attaya has no civil liability for any of the matters stated in cross-points one through four. Accordingly, these cross-points are overruled.

In cross-point five, Shoukfeh claims the jury's failure to award him damages for physical pain and suffering is so against the great weight and preponderance of the evidence as to be manifestly unjust. We disagree.

This complaint relates to the battery action. In that regard, there is no evidence of "physical pain and suffering" in the record. Even though Shoukfeh did testify that Attaya "cut" him on the hand with a car key, there is no evidence of the severity of the cut and no evidence that he suffered any pain (substantial or otherwise) from the cut. The mere fact that an injury occurred (however slight) does not mean that compensable damages necessarily resulted from the injury. This is particularly true in the absence of descriptive evidence as to the nature and extent of the injury and pain and suffering, if any. As we stated above, there is simply no evidence establishing any item of damages arising from the battery.

## Shoukfeh's Appeal

In his appeal, Shoukfeh asserts four points. By these points of error, Shoukfeh challenges the trial court's failure to award him exemplary damages, as found by the jury, and failure to award him prejudgment interest on actual damages awarded by the jury. Also, he claims the trial court erred by granting

judgment notwithstanding the jury's affirmative answer to the malice issue. In this regard, we conclude that the absolute immunity afforded Attaya precludes judgment for Shoukfeh on any of these matters. Shoukfeh's four points of error are overruled.

In sum, we sustain Attaya's third, fourth, ninth, eighteenth, nineteenth and twentieth points of error. Our disposition of these points pretermits determination of Attaya's remaining points of error. We overrule Shoukfeh's five cross-points to Attaya's appeal and overrule Shoukfeh's four points of error in his appeal. Accordingly, we reverse the trial court's judgment and render judgment that Shoukfeh take nothing on his cause of action against Attaya and that Attaya recover his costs. The trial court's sanction orders rendered against Attaya are set aside and held for naught. All costs in each appeal are adjudged against Shoukfeh. All relief not granted herein is denied.