5–STATE HELICOPTERS, INC. and
Bradford Scott Ladue, Appellants
and Appellees,

v.

John E. COX and Brian Novickis,
Appellees and Appellants.

No. 2–03–205–CV.

Court of Appeals of Texas,
Fort Worth.

July 29, 2004.

Rehearing Overruled Sept. 23, 2004.

Winstead Sechrest & Minick, P.C., and Jonathan J. Cunningham and James C. Gordon, Dallas, for Appellants and Appellees.

Law Offices of Art Bender, and Art Brender and Jason C.N. Smith, Fort Worth, for Appellees and Appellants.

Panel A: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

In this libel and tortious interference case, 5–State Helicopters, Inc. and Bradford Scott Ladue (appellants) appeal from a judgment for John E. Cox and Brian Novickis (appellees). In three issues, appellants contend that the judgment should be reversed because appellees' claims are barred by the doctrines of limitations and absolutely privileged communications [1] and

---

1. Appellants also refer to this doctrine as quasi-judicial immunity. *See Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 768 (Tex.1987)

(stating that absolute privilege is more properly thought of as an immunity because it is based on the personal position or status of the

the evidence is legally and factually insufficient to support the jury's findings on liability and damages. Appellees bring a conditional cross-appeal, in which they challenge the jury instruction on malice pertinent to their libel claim. Because we conclude that the absolute privilege doctrine bars both of appellees' claims, we will reverse and render.

Appellants are in the business of helicopter heavy lift operations. At the time the events pertinent to this case occurred, appellees were Federal Aviation Administration (FAA) safety inspectors assigned to the Fort Worth Flight Standards District Office (FSDO). In November 1998, appellees were in Waco for another business purpose when they noticed appellants conducting a heavy lift operation and decided to perform an inspection of appellants' helicopters. As a result of the inspection, appellees and other FAA officials conducted an investigation into whether appellants were in violation of federal air safety laws. While the FAA investigation was pending, appellants wrote two letters of complaint to the FAA, requesting an internal investigation into appellees' actions and calling for their resignations. The FAA conducted the requested internal investigation and informed appellees that they had done nothing wrong. Appellees were, however, dissatisfied with the outcome of the internal investigation because they believed it did not completely exonerate them.

Consequently, appellees sued appellants for libel and tortious interference with contract. Appellees alleged that appellants' libelous statements resulted in appellees being investigated, caused them shame, humiliation, and mental anguish, and greatly damaged their reputations professionally and in the community. Appellees further alleged that appellants' conduct unlawfully interfered with and adversely affected appellees' contractual relations with their employer, the FAA. The case was tried to a jury, which returned a verdict favorable to appellees on both theories.

Appellants moved for judgment notwithstanding the verdict, asserting, among other things, that their statements were absolutely privileged and therefore not subject to a claim for civil liability.[2] At appellees' request, however, the trial court rendered judgment for them on their tortious interference with contract claim. This appeal followed.

In their second issue, appellants contend that their statements regarding appellees in their letters to the FAA were absolutely privileged communications because they were made during the course of a quasi-judicial proceeding. Appellants assert that they are therefore immune from civil liability based on the statements. Appellees contend that the statements were not made during the course of a quasi-judicial proceeding because they were not made during an administrative hearing or an appeal from an administrative hearing.

An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists, even though the communication is false and was made or published with express malice. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex.1994); *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942). This doctrine has been firmly established in

---

actor); *Attaya v. Shoukfeh,* 962 S.W.2d 237, 238 (Tex.App.-Amarillo 1998, pet. denied) (referring to absolute privilege as an immunity).

2. Appellants also raised absolute privilege in a pretrial motion for summary judgment, which the trial court denied.

Texas for well over one hundred years. *See Runge v. Franklin,* 72 Tex. 585, 10 S.W. 721, 723 (1889). The absolute privilege applies to communications related to both proposed and existing judicial and quasi-judicial proceedings. *James,* 637 S.W.2d at 916–17; *Reagan,* 166 S.W.2d at 912–13; *Randolph v. Jackson Walker L.L.P.,* 29 S.W.3d 271, 278 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Attaya,* 962 S.W.2d at 239.

■ A proceeding is quasi-judicial in nature if it is conducted by a governmental executive officer, board, or commission that has the authority to hear and decide the matters coming before it or to redress the grievances of which it takes cognizance. *Attaya,* 962 S.W.2d at 239; *Hernandez v. Hayes,* 931 S.W.2d 648, 651 (Tex.App.-San Antonio 1996, writ denied); *McAfee v. Feller,* 452 S.W.2d 56, 57–58 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ). Even communications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide. *Reagan,* 166 S.W.2d at 913; *see also Attaya,* 962 S.W.2d at 238–39; *Rose v. First Am. Title Ins. Co.,* 907 S.W.2d 639, 641–42 (Tex.App.-Corpus Christi 1995, no writ); *Putter v. Anderson,* 601 S.W.2d 73, 75, 77 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.) (all holding that private citizen's complaint may be first step in quasi-judicial proceeding if governmental entity has duty or authority to investigate and resolve same). Such communications stand "on the same footing [regarding] libel as do communications made in a court of justice." *Reagan,* 166 S.W.2d at 913.

■ The public policy behind the application of the absolute privilege to judicial proceedings is that the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation. *James,* 637 S.W.2d at 917. Similarly, the rationale for extending the absolute privilege to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress "without the fear of being called to answer in damages" and that the administration of justice will be better served if witnesses are not deterred by the threat of lawsuits. *Attaya,* 962 S.W.2d at 239 (quoting *Parker v. Holbrook,* 647 S.W.2d 692, 695 (Tex. App.-Houston [1st Dist.] 1982, writ ref'd n.r.e.)). The absolute privilege is intended to protect the integrity of the process and ensure that the quasi-judicial decision-making body gets the information it needs. *Id.*

■ Whether an alleged defamatory statement is related to a proposed or existing judicial or quasi-judicial proceeding, and is therefore absolutely privileged, is a question of law. *Reagan,* 166 S.W.2d at 912; *Randolph,* 29 S.W.3d at 278; *Thomas v. Bracey,* 940 S.W.2d 340, 343 (Tex.App.-San Antonio 1997, no pet.). All doubts should be resolved in favor of the communication's relation to the proceeding. *Randolph,* 29 S.W.3d at 278; *Thomas,* 940 S.W.2d at 343.

In this case, FAA's quasi-judicial status is not in dispute. The FAA Administrator may reinspect and reexamine any civil aircraft at any time to ensure that the aircraft is in compliance with federal air safety laws. 49 U.S.C.A. § 44709(a) (West Supp.2004). If it appears that a person may be in violation of federal aviation statutes or regulations, the FAA is authorized to initiate an investigation and decide whether any violations have occurred. *Id.* § 46101(a)(2), (4). The FAA may, among other things, hold administrative hearings, issue orders of compliance, assess civil penalties, seize noncompliant aircraft, or

bring a civil enforcement action in federal district court. *Id.* § 46106; FAA, DOT Investigative and Enforcement Procedures, 14 C.F.R. §§ 13.16–.17, 13.19–.20, 13.75, 13.81 (2004). If, however, as a result of the investigation, the FAA determines that a violation has occurred that does not require legal enforcement action, an appropriate official in the FAA field office responsible for processing the enforcement case "may take administrative action in disposition of the case." 14 C.F.R. § 13.11(a). Such administrative actions include issuing a warning notice to the alleged violator. *Id.* § 13.11(b)(1).

Here, appellees inspected appellants' aircraft on November 20, 1998 to ensure that the aircraft were in compliance with federal air safety laws. Before the inspection, Novickis informed Ladue that he (Novickis) was "acting as the [FAA] Administrator" and had the authority under federal regulations to conduct the inspection. During the inspection, appellees noticed a battery installation in one helicopter that did not appear to meet federal airworthiness standards and fuel storage drums that appeared to contain hazardous materials. Appellees also questioned whether the flooring in one of the helicopters complied with federal regulations. Further, contrary to federal regulations, the flight manual was missing from one helicopter.

As a result of the November 1998 inspection, Novickis filed an enforcement investigative report, listing the federal regulation that he believed appellants had violated. In addition, at the Fort Worth FSDO's request, FAA investigators interviewed appellees, conducted a second inspection of appellants' aircraft, and proceeded with an investigation to determine whether appellants had violated federal regulations. Meanwhile, on November 23 and December 8, 1998, appellants wrote their letters to the FAA complaining of the November 1998 inspection.

After the investigation concerning appellants' aircraft was complete, the FAA concluded that most of the matters raised by the November 1998 inspection should be closed with no further action. The FAA informed appellants of this conclusion by letter on March 25, 1999. The FAA did conclude that appellants had violated federal regulations by not having a flight manual on one of their aircraft, but also concluded that the violation did not require legal enforcement action. Accordingly, as authorized by the federal regulations, the Fort Worth FSDO took administrative action disposing of the case. *See* 14 C.F.R. § 13.11(a). On March 30, 1999, Novickis, with his supervisor's authorization, issued a warning letter informing appellants of the violation and of the FAA's conclusion that it would not pursue legal enforcement action, but would make the warning letter a matter of record. *See id.* § 13.11(b)(1).

■ Because the FAA had the authority to both initiate the investigation into whether appellants were in compliance with federal air safety laws and dispose of appellants' violation administratively without legal enforcement action, the FAA's actions stemming from the November 1998 inspection constituted a quasi-judicial proceeding. *See Reagan,* 166 S.W.2d at 913; *Attaya,* 962 S.W.2d at 239. Further, although appellants, in their two letters to the FAA, requested a separate investigation into appellees' conduct during the November 1998 inspection, their statements were also related to the FAA's investigation regarding their aircraft because they complained of the very inspection that resulted in that proceeding. *See Thomas,* 940 S.W.2d at 343; *Bennett v. Computer Assocs. Int'l, Inc.,* 932 S.W.2d 197, 201 (Tex.App.-Amarillo 1996, writ denied) (both holding that communication must

bear some relationship to pending or proposed judicial proceeding in order for absolute privilege to apply). In addition, even if there were a doubt as to the communications' relevance to the FAA's quasi-judicial proceeding, we would be required to resolve it in favor of—not against—a relation to the proceeding. *Randolph*, 29 S.W.3d at 278; *Thomas*, 940 S.W.2d at 343.

■ The mere fact that the FAA's investigation did not culminate in a full-blown administrative hearing or a "formal adjudication"[3] did not alter its quasi-judicial nature. It is undisputed that the FAA had the authority to conduct such a hearing and adjudication if it had determined that such measures were necessary. A proceeding's quasi-judicial status depends on whether the governmental entity has the *authority* to investigate and decide the matters at issue, not on the length, complexity, or outcome of the proceeding. *See Reagan*, 166 S.W.2d at 913; *Attaya*, 962 S.W.2d at 238–39; *Rose*, 907 S.W.2d at 641–42; *Putter*, 601 S.W.2d at 75, 77 (all holding that respective proceedings were quasi-judicial because governmental entities had authority to investigate and resolve private citizens' complaints).

■ Moreover, to adopt the narrow view of quasi-judicial proceedings that appellees urge would result in a rule that private citizens' communications to a quasi-judicial body about a matter that the entity was authorized to investigate and resolve would not be privileged unless and until the proceeding reached the administrative hearing stage. Such a rule would have a chilling effect on the free flow of information and deter rather than aid the decision-making body's efforts to obtain necessary information. *See James*, 637 S.W.2d at 917; *Attaya*, 962 S.W.2d at 239. In addition, the policy furthering the general public's right to appeal freely to governmental entities for redress without the fear of lawsuits is of such importance that it is entitled to protection even at the expense of damage to a particular individual. *See Bird*, 868 S.W.2d at 771; *Reagan*, 166 S.W.2d at 913; *Attaya*, 962 S.W.2d at 239.

In summary, we hold that, because appellants' two letters were related to a matter that the FAA was authorized to investigate and determine—whether appellants' aircraft were in compliance with federal aviation laws—appellants' statements in their letters were related to a quasi-judicial proceeding and were absolutely privileged, regardless of the truth, falsity, or malicious nature of the statements. Moreover, both appellees' claim for libel and their claim for tortious interference with contract are for defamation-type damages based on the allegedly libelous communications;[4] therefore, the absolute privilege doctrine bars both claims. *See Bird*, 868 S.W.2d at 771–72 (extending absolute privilege beyond defamation cases to bar suits in which damages sought are basically "defamation damages," in order to avoid

---

3. *See* 14 C.F.R. § 13.11(b)(2) (stating that issuance of a warning letter "does not constitute a formal adjudication of the matter").

4. The trial court's jury instruction on damages instructed the jury to consider the following elements of damages:

A. *General damages.* "General damages" are those that naturally, proximately, and necessarily result from defamation, such as injuries to character or reputation, injuries to feelings, mental anguish, and other like wrongs and injuries incapable of money valuation. In calculating general damages you may include lost earning capacity, if any. General damages may be presumed by you if the publication is libel per se, that is, if the libel injures John Cox[/Bryan Novickis] in his office, business, profession, or occupation.

the "circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label"); *In re Hinterlong,* 109 S.W.3d 611, 636 (Tex.App.-Fort Worth 2003, orig. proceeding) (op. on reh'g); *Ledbetter v. Ramsey,* No. 02–02–00248–CV, 2003 WL 360635, at *2 (Tex.App.-Fort Worth Feb. 20, 2003, pet. denied) (mem.op.) (Gardner, J., concurring) (both noting extension). Accordingly, we sustain appellants' second issue. We reverse the trial court's judgment and render judgment that appellees take nothing.[5]

5. In light of our holding with regard to appellants' second issue, we need not address the parties' remaining issues. *See* Tex.R.App. P. 47.1.