COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO. 2-05-139-CV

 

A.J. MORRIS, M.D.                                                              APPELLANT

 

                                                   V.

 

PHILLIP OSBORNE, M.D.                                                          APPELLEE

 

                                              ------------

 

           FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Introduction








In
this libel per se case, A.J. Morris, M.D. appeals the trial court=s order granting a summary
judgment for Phillip Osborne, M.D.  In
his sole issue, Dr. Morris argues that the trial court erred in granting the
summary judgment because (1) Dr. Osborne did not prove, as a matter of law,
that his statements were opinions, (2) extrinsic evidence is not required to
explain the defamatory meaning of Dr. Osborne =s statements, and (3) he did not establish any of
his affirmative defenses, which include consent, privilege, and statute of
limitations.  We affirm. 

Background

Dr.
Morris treated Antonio Perez, Wesley Wommack, Jamie Hernandez, and Dallace
Vickers at various times for injuries they received on the job. Among other
things, Dr. Morris prescribed each of the patients Lortab, Diazepam, Vicodin,
Valium, Hydrocodone, Xanax, and Soma.

The
patients= insurance companies hired Dr.
Osborne to review Dr. Morris=s respective courses of treatment. 
Dr. Osborne has a background in pain and rehabilitation.  Currently, he does not treat patients;
instead, his entire practice is related to administration, writing and
training, and doing independent medical evaluations (IMEs) and peer reviews,
primarily for HealthSouth Corporation. 

For
each of the four patients, Dr. Osborne submitted to the insurance companies
either an IME or a peer review of Dr. Morris=s treatment.  Dr.
Morris complains about the following statements in those reports:

Patient Perez, IME report to Ms.
Susan Perry at RSKCo. dated August 6, 2002:

 

5.  Are medical services, treatments and diagnostics medically
necessary and related to the injury? 

 








. . . .  I certainly would not find any support in the use of Lortab,
Diazepam or Vicodin.  He also had
Zantac, Zostrix and Lamisil; and again these do not appear to be reasonable or
medically necessary either.  All of
these office visits do not appear to have been reasonable or necessary.  The patient should have been on maintenance
care only with the only return to the doctor=s office every three to six months, and he should have
been placed primarily on over-the-counter medications.  In my opinion he should not be on any controlled
substance. . . . 

 

10.  Is Diazepam reasonable and necessary for this accident?

 

I do not think [it] is reasonable
or necessary at all.

    

Patient Wommack, Peer Review to
Ms. Brenda Williams at Crawford & Company dated August 28, 2002:

 

Are prescription medications being
prescribed to the patient medically reasonable and necessary?

 

No.


 

Patient Hernandez, Peer Review to
Rosemary Valencia at America First dated November 27, 2002:

 

3) Should the claimant have to
continue on medications?  If so, what type?

 

. . . 

 

I do not
believe that the continued use of Vicodin and opiate derivative analgesic is
reasonable or necessary.

 

Patient Vickers, Peer Review to
Ms. Pat Datcher dated September 14, 2003:

 

What
medications are R&N for the 8/27/98 injury?








The patient is currently being
prescribed Hydrocodone, Xanax and Soma on a very regular basis and I do not
feel that this is R&N at this time. 

 

Dr.
Morris contends that Dr. Osborne=s statements in these reports are defamatory because they
accuse him of prescribing medicine without a valid medical purpose, which is a
crime under the Health and Safety Code.[2]  He sued Dr. Osborne for libel per se under
section 73.001 of the civil practices and remedies code, which defines libel as
Aa defamation expressed in writing
or other graphic form . . . that tends to injure a living person=s reputation and thereby expose
the person to public hatred, contempt or ridicule, or financial injury or to
impeach any person=s honesty, integrity, virtue, or
reputation.@[3] 








Dr.
Osborne moved for summary judgment, asserting that Dr. Morris did not establish
the elements of his cause of action as a matter of law.  As one ground for summary judgment, Dr.
Osborne contended that absolute judicial privilege applies to protect his
statements because they were made in the context of a workers= compensation claim.  The trial court granted Dr. Osborne=s motion for summary judgment and
ordered that Dr. Morris take nothing. 
This appeal followed.  

Standard
of Review

When
a trial court=s order granting summary judgment
does not specify the ground or grounds relied on for its ruling, summary
judgment will be affirmed on appeal if any of the theories presented to the
trial court and preserved for appellate review is meritorious.[4]  In a summary judgment case, the issue on
appeal is whether the movant met the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.[5]  The burden of proof is on the movant, and
all doubts about the existence of a genuine issue of material fact are resolved
against the movant.[6] 








A
movant is entitled to summary judgment on an affirmative defense if the
defendant conclusively proves all the elements of the affirmative defense.[7]  To accomplish this, the movant must present
summary judgment evidence that establishes each element of the affirmative
defense as a matter of law.[8]  If the movant has established its right to
summary judgment, the burden shifts to the nonmovant to present evidence that
would raise a genuine issue of material fact.[9]  Summary judgment may be obtained in a
defamation case upon a proven plea of privilege.[10]

Absolute
Privilege 

In
his motion for summary judgment, Dr. Osborne contended that he had an absolute
judicial privilege because the alleged defamatory statements in the IMEs and
peer review reports were related to, and in contemplation of, a judicial
proceeding, specifically, the patients= workers= compensation claims.  In
response, Dr. Morris argues that this privilege does not apply because Dr.
Osborne did not make the statements in a quasi-judicial capacity, he did not
make the statements in good faith, and because extending absolute judicial
privilege to the facts in this case would create injustice. 








A
communication or publication relating to both proposed and existing judicial
and quasi-judicial proceedings is absolutely privileged and one for which no
civil remedy exists, even if the communication is false and made with express
malice.[11]  A proceeding is quasi-judicial in nature if
it is conducted by a governmental executive officer, board, or commission that
has the authority to hear and decide the matters coming before it or to redress
the grievances of which it takes cognizance.[12]  Additionally, even communications made in
contemplation of or preliminary to a quasi-judicial proceeding are privileged
if they concern a matter that the quasi-judicial body is authorized to
investigate and decide.[13]








Whether
an alleged defamatory statement is related to a proposed or existing judicial
or quasi-judicial proceeding, and is therefore absolutely privileged, is a
question of law.[14]  All doubts should be resolved in favor of
the communication=s relation to the proceeding.[15]








The
general purpose of the workers= compensation act is to compensate injured workers and their
dependents through a system of administrative reviews.[16]
The law is well-settled that the function of the workers= compensation board is
quasi-judicial in nature.[17]  In fact, in Pisharodi v. Barrash, the
Corpus Christi Court of Appeals specifically applied the absolute judicial
privilege to the context of a workers= compensation claim.[18]  The court held that a doctor=s written report criticizing a
treating physician=s care of a patient, submitted at
the request of the patient=s workers= compensation carrier, was
privileged regardless of the libelous statements in the report.[19]

Dr.
Morris admits that this case arose out of a series of medical peer reviews and
an IME submitted by Dr. Osborne regarding Dr. Morris=s treatment of patients pursuant
to the Texas Workers= Compensation Act.  Dr. Osborne submitted all of the allegedly
defamatory reports to individuals at various insurance companies for the
purposes of assessing workers= compensation claims.  Thus,
his reports were made in contemplation of a proceeding before the workers= compensation commission, and the
mere fact that any investigation did not culminate in a formal adjudication did
not alter its quasi-judicial nature.[20]  Therefore, his reports are privileged.[21]

Additionally,
although Dr. Morris argues that Dr. Osborne must show he made the communication
in good faith in order to be protected by privilege, it 








is the nature
of an absolute privilege that malice is immaterial.[22]
AWhereas malice dissolves a
qualified privilege, the persistence of an absolute privilege does not turn on
the presence or absent of good faith.@[23]

Finally,
Dr. Morris argues that applying the absolute privilege to this fact situation
leads to injustice because it permits insurance companies to choose doctors for
peer reviews who recommend the least expensive, rather than the most effective,
treatment for the patients in question. The purpose of the absolute privilege
doctrine, however, is to protect the integrity of judicial proceedings and
ensure that the quasi-judicial decision-making body gets the information it
needs.[24]  Our holding is consistent with that
purpose.  

 

 

 

 

 

 








Conclusion

For
all of the foregoing reasons, we hold as a matter of law that Dr. Osborne=s reports were absolutely
privileged and Dr. Morris=s libel claims are barred.[25]  Therefore, we overrule Dr. Morris=s sole issue and affirm the trial
court=s judgment. 

 

PER CURIAM

 

PANEL A:   CAYCE,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:  February 16, 2006

 











[1]See Tex.
R. App. P. 47.4.





[2]See Tex.
Health & Safety Code Ann. '' 481.071(a), 481.128(1) (Vernon
2003) (providing that a physician may not prescribe a controlled substance
except for a valid medical purpose and in the course of medical practice).





[3]Tex. Civ.
Prac. & Rem. Code Ann. ' 73.001 (Vernon 2005).





[4]Provident Life & Accident Ins.
Co. v. Knott, 128
S.W.3d 211, 216 (Tex. 2003); Star-Telegram, Inc. v. Doe, 915 S.W.2d 471,
473 (Tex. 1995); Harwell v. State Farm Mut. Auto Ins. Co., 896 S.W.2d
170, 173 (Tex. 1995). 





[5]Tex. R.
Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). 





[6]Sw. Elec. Power Co., 73 S.W.3d at 215.





[7]Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).





[8]Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).





[9]City of Houston, 589 S.W.2d at 678; Larson v.
Family Violence and Sexual Assault Prevention Ctr. of S. Tex., 64 S.W.3d
506, 514 (Tex. App.CCorpus Christi 2001, pet. denied).






[10]Krishnan v. Law Offices of Preston
Henrichson, P.C.,
83 S.W.3d 295, 301 (Tex. App.CCorpus Christi 2002, pet. denied); Thomas v. Bracey, 940 S.W.2d
340, 342 (Tex. App.CSan Antonio 1997, no writ).





[11]See Bird v. W.C.W., 868 S.W.2d 767, 771-72 (Tex.
1994); 5-State Helicopters, Inc. v. Cox, 146 S.W.3d 254, 256 (Tex. App.CFort Worth 2004,  pet. denied). This privilege extends to any
statement made by the judges, jurors, counsel, parties, or witnesses, and
attaches to all aspects of the proceedings, including statements made in open court,
pretrial hearings, depositions, affidavits, and any of the pleadings or other
papers in the case. James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982).





[12]Cox, 146 S.W.3d at 256; Attaya v.
Shoukfeh, 962 S.W.2d 237, 239 (Tex. App.CAmarillo 1998, pet. denied).  





[13]Cox, 146 S.W.3d at 256; see also
Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942)
(stating that where there is an absolute privilege, no action exists for
defamation).  





[14]Reagan, 166 S.W.2d at 912; Cox,
146 S.W.3d at 256..  





[15]Cox, 146 S.W.3d at 256; Randolph
v. Jackson Walker L.L.P., 29 S.W.3d 271, 278 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).





[16]Tex. Workers' Compensation Com'n
v. Patient Advocates of Tex., 136 S.W.3d 643, 652 (Tex. 2004); see generally Tex. Lab. Code Ann. chs. 408, 410
(Vernon 1996) (providing the procedures for awarding benefits to injured
employees and contesting the award of those benefits). 





[17]Washburn v. Assoc. Indem. Corp., 721 S.W.2d 928, 932 (Tex. Civ.
App.CDallas 1986, writ ref=d n.r.e.); Daniels v. Travelers
Ins. Co., 606 S.W.2d 724, 725 (Tex. Civ. App.CFort Worth 1980, writ dism=d); Moore v. Means, 549
S.W.2d 417, 418 (Tex. Civ. App.C1977, writ ref=d n.r.e.); see also Vestal v.
Tex. Employers= Ins. Ass=n, 285 S.W. 1041, 1044 (Tex. Comm=n App. 1926, judgm=t adopted).  





[18]Pisharodi v. Barrash, 116 S.W.3d 858, 864 (Tex. App.CCorpus Christi 2003, pet. denied).






[19]Id. 
The court also held that republication of the statements outside the
judicial context waives the privilege. Id.





[20]Cox, 146 S.W.3d at 259.  





[21]Dr. Morris does not argue that Dr.
Osborne republished the statements outside of the peer review/IME process;
therefore, he did not waive his privilege. 





[22]Cox, 146 S.W.3d at 259; Pisharodi,
116 S.W.3d at 864.





[23]Prappas v. Meyerland Cmty. Imp.
Ass=n, 795 S.W.2d 794, 799 (Tex. App.CHouston [14th Dist.] 1990, writ
denied) (citing Runge v. Franklin, 72 Tex. 585, 589, 10 S.W. 721, 723
(1889)).  





[24]Cox, 146 S.W.3d at 257; Attaya,
962 S.W.2d at 239.  





[25]In light of our holding, we need
not address Dr. Morris=s remaining arguments.  See Tex.
R. App. P. 47.1.