COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-041-CV

 

 

PERDUE, BRACKETT, FLORES, UTT &                                   APPELLANTS

BURNS, A JOINT VENTURE;
LUTHER W. 

ALUKE@ ELLIS, C. DAVID FIELDER,
AND 

ELIZABETH PARMER

 

                                                   V.

 

LINEBARGER, GOGGAN, BLAIR, SAMPSON &                           APPELLEES

MEEKS, L.L.P. AND BRYAN
EPPSTEIN & CO.

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

When one law firm, seeking a contract to provide
legal services to a city, makes allegedly defamatory statements to the city
council about the performance of a competing law firm, are the statements
absolutely privileged under the doctrine of quasi-judicial immunity?  We answer Ayes,@ and we
affirm the trial court=s summary judgment.








                                            Background

Appellants Ellis, Fielder, and Parmer are members
of Appellant Perdue, Brackett, Flores, Utt & Burns, a joint venture (AJoint
Venture@).  The Joint Venture and Appellee Linebarger,
Goggan, Blair & Sampson, LLP (ALinebarger@) are
competing law firms that collect delinquent ad valorem property taxes for
taxing entities across Texas.  Appellee
Bryan Eppstein & Co. is a political consulting firm hired by Linebarger.

In 2002, the Joint Venture entered into a
three-year contract with the City of Fort Worth (Athe City@) to
collect delinquent ad valorem property taxes. 
The contract provided the City with the option to exercise two one-year
extensions.  In October 2004, the Joint
Venture contacted City staff about exercising the extension option.  Internal City reports indicate that City
staff were pleased with the Joint Venture=s
performance and rate of collection during the contract=s
three-year primary term.  The City
manager informed the mayor and City council in writing that he intended to
exercise the extension option.

The extension option was set on the council=s
executive session agenda for November 30, 2004. 
According to the Joint Venture, after the meeting, City staff told
representatives of the Joint Venture that the City was going to exercise the
option in the Joint Venture=s favor.








The extension option was again set on the council=s
executive session agenda for December 7, 2004; the record does not explain why
the option was set on the agenda a second time. 
The session was closed to the public. 
That day, apparently before or during the meeting, Eppstein delivered a
memo to City staff on behalf of Linebarger that criticized the Joint Venture=s
performance, accused the Joint Venture of providing false information to the
council, and claimed that the Joint Venture had cost the city over $700,000 in
uncollected tax revenue.  The memo is the
genesis of the Joint Venture=s claims
against Linebarger and Eppstein.

Rather than exercise the one-year renewal option,
the City council voted Ato continue the contract month
by month until an audit of the contract could be completed.@  The auditor presented his report on March 24,
2005, and criticized the Joint Venture for its handling of certain bankruptcy
cases. 

After receiving the auditor=s
report, the City requested new proposals for the tax collection contract.  Both the Joint Venture and Linebarger
submitted proposals, and both parties made presentations to the City council at
an open meeting in May 2005.  The Joint
Venture alleges that Linebarger made additional defamatory statements at the
open meeting.  The City ultimately
awarded the contract to Linebarger.








The Joint Venture sued Linebarger and Eppstein
for defamation, tortious interference, business disparagement, and conspiracy,
alleging that statements Linebarger and Eppstein made in the December 2004 memo
and during the May 2005 council meeting were false and defamatory and had
caused the council to not exercise its extension option in the Joint Venture=s
favor.  Linebarger and Eppstein moved for
summary judgment on, among other grounds, the affirmative defense that the
alleged defamatory statements were absolutely privileged under the doctrine of
quasi-judicial immunity.  The trial court
granted summary judgment in favor of Linebarger and Eppstein, and the Joint
Venture filed this appeal.

                                             Discussion








The key question in this case is whether
Linebarger=s allegedly defamatory statements
in the December 2004 memo and before the City council in May 2005 are
absolutely privileged under the doctrine of quasi-judicial immunity.  An absolutely privileged communication is one
for which, due to the occasion upon which it was made, no civil remedy exists,
even though the communication is false and was made or published with express
malice.  5-State Helicopters, Inc. v.
Cox, 146 S.W.3d 254, 256 (Tex. App.CFort
Worth 2004, pet. denied); see Bird v. W.C.W., 868 S.W.2d 767, 771B72 (Tex.
1994); James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982); Reagan v.
Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  This doctrine has been firmly established in
Texas for well over one hundred years.  5-State
Helicopters, 146 S.W.3d at 256B57;
see Runge v. Franklin, 72 Tex. 585, 10 S.W. 721, 723 (1889).  The absolute privilege applies to
communications related to both proposed and existing judicial and
quasi-judicial proceedings.  James,
637 S.W.2d at 916B17; Reagan, 166 S.W.2d at
912B13; 5-State
Helicopters, Inc., 146 S.W.3d at 257; Randolph v. Jackson Walker L.L.P.,
29 S.W.3d 271, 278 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied); Attaya v. Shoukfeh, 962 S.W.2d 237, 239
(Tex. App.CAmarillo 1998, pet denied). 








The public policy behind the application of the
absolute privilege to judicial proceedings is that the administration of
justice requires full disclosure from witnesses, unhampered by fear of
retaliatory suits for defamation.  James,
637 S.W.2d at 917; 5-State Helicopters, Inc., 146 S.W.3d at 257.  Similarly, the rationale for extending the
absolute privilege to statements made during quasi-judicial proceedings rests in
the public policy that every citizen should have the unqualified right to
appeal to governmental agencies for redress Awithout
the fear of being called to answer in damages@ and
that the administration of justice will be better served if witnesses are not
deterred by the threat of lawsuits.  5-State
Helicopters, Inc., 146 S.W.3d at 257; Attaya, 962 S.W.2d at 239
(quoting Parker v. Holbrook, 647 S.W.2d 692, 695 (Tex. App.CHouston
[1st Dist.] 1982, writ ref=d
n.r.e.)).  The absolute privilege is
intended to protect the integrity of the process and ensure that the
quasi-judicial decision-making body gets the information it needs.  5-State Helicopters, Inc., 146 S.W.3d
at 257; Attaya, 962 S.W.2d at 239.








Two requirements must be met in order for the
absolute privilege to apply: (1) the governmental entity must have the power
and authority to investigate and decide the issueCthat is,
quasi-judicial powerCand (2) the communication must
bear some relationship to a pending or proposed quasi-judicial proceeding.  Clark v. Jenkins, 248 S.W.3d 418, 431
(Tex. App.CAmarillo 2008, pet. denied)
(citing 5-State Helicopters, Inc., 146 S.W.3d at 259; Bennett v.
Computer Assocs. Int=l,  Inc., 932 S.W.2d 197, 201 (Tex. App.CAmarillo
1996, writ denied)); Attaya, 962 S.W.2d at 239; Hernandez v. Hayes,
931 S.W.2d 648, 651 (Tex. App.CSan
Antonio 1996, writ denied); McAfee v. Feller, 452 S.W.2d 56, 57B58 (Tex.
Civ. App.CHouston [14th Dist.] 1970, no
writ).  Even communications made in
contemplation of or preliminary to a quasi-judicial proceeding are privileged
if they concern a matter that the quasi-judicial body is authorized to
investigate and decide.  Reagan,
166 S.W.2d at 913; 5-State Helicopters, Inc., 146 S.W.3d at 257; see
also Attaya, 962 S.W.2d at 238B39; Rose
v. First Am. Title Ins. Co., 907 S.W.2d 639, 641B42 (Tex.
App.CCorpus
Christi 1995, no writ); Putter v. Anderson, 601 S.W.2d 73, 75, 77 (Tex.
Civ. App.CDallas 1980, writ ref=d
n.r.e.) (all holding that private citizen=s
complaint may be first step in quasi-judicial proceeding if governmental entity
has duty or authority to investigate and resolve same).  Such communications stand Aon the
same footing [regarding] libel as do communications made in a court of justice.@  Reagan, 166 S.W.2d at 913; 5-State
Helicopters, Inc., 146 S.W.3d at 257.








But A[a]ll
communications to public officials are not absolutely privileged.@  Hurlbut v. Gulf Atl. Life Ins. Co.,
749 S.W.2d 762, 768 (Tex. 1987).  The
absolute privilege attaches only in situations that Ainvolve
the administration of the functions of the branches of government.@  Id. 
Initial communications Ato a
public officer . . . who is authorized or privileged to take action@ are
subject to only a qualified privilege, not absolute immunity.  Id.; Clark, 248 S.W.3d at
432.  For example, in Hurlbut, the
supreme court held that criminal allegations made to an assistant attorney
general were conditionally, not absolutely, privileged.  749 S.W.2d at 767B68.  Likewise, in Clark, the Amarillo court
held that a communication encouraging a congressman to investigate alleged
civil rights violations was not absolutely privileged because the communication
was not made to the congressman as part of a legislative proceeding and because
the congressman lacked the power to conduct a formal investigation or grant the
ultimate relief sought by the declarant. 
248 S.W.3d at 433.  








A governmental entity=s power
to decide a controversy presented by an allegedly defamatory statement is a key
factor in determining whether the defamatory statement relates to the exercise
of quasi-judicial power.  The defamatory
statements in Hurlbut and Clark did not relate to the exercise of
quasi-judicial power because the persons to whom the declarants made the
defamatory statementsCthe assistant attorney general
in Hurlbut and the congressman in ClarkCdid not
have the power to decide the controversies presented by the statements.  See Hurlbut, 749 S.W.2d at 767; Clark,
248 S.W.3d at 433.  On the other hand,
the supreme court held in Reagan that the Board of Insurance
Commissioners exercised quasi-judicial power when it decided whether to issue
an insurance sales license to an applicant. 
166 S.W.2d at 913.  Similarly, a
police department=s internal affairs division
exercised quasi-judicial power when addressing a complaint made by a citizen
against an officer because the division had the power to determine whether the
officer should be disciplined.  Putter,
601 S.W.2d at 77; see 5-State Helicopters, Inc., 146 S.W.3d at 258 (ABecause
the FAA had the authority to both initiate the investigation . . . and
dispose of appellants= violation administratively
without legal enforcement action, the FAA=s
actions . . . constituted a quasi‑judicial proceeding.@
(Emphasis added)); see also Shanks v. Allied Signal, Inc., 169 F.3d 988,
994 (5th Cir. 1999) (ATexas courts have also denied
absolute immunity where the challenged communications are made to agencies that
issue merely recommendations or preliminary findings.@).

Whether an alleged defamatory statement is
related to a proposed or existing judicial or quasi-judicial proceeding, and is
therefore absolutely privileged, is a question of law.  Reagan, 166 S.W.2d at 912; 5-State
Helicopters, Inc., 146 S.W.3d at 257; Randolph, 29 S.W.3d at 278; Thomas
v. Bracey, 940 S.W.2d 340, 343 (Tex. App.CSan
Antonio 1997, no pet.).  All doubts
should be resolved in favor of the communication=s
relation to the proceeding.  5-State
Helicopters, Inc., 146 S.W.3d at 257; Randolph, 29 S.W.3d at 278; Thomas,
940 S.W.2d at 343.

1.     Does the City council possess
quasi-judicial power?

The first question is whether the City council
possesses quasi-judicial power, in other words, whether the council has the
authority to hear and decide the matters coming before it or to redress the
grievances of which it takes cognizance. 
See Clark, 248 S.W.3d at 431; 5-State Helicopters, Inc.,
146 S.W.3d at 257.  Texas courts have
recognized six powers relevant to the determination of whether a body possesses
quasi-judicial power:

(1) the power to exercise
judgment and discretion;








(2) the power to hear and
determine or to ascertain facts and decide;

 

(3) the power to make
binding orders and judgments;

 

(4) the power to affect
the personal or property rights of private persons;

 

(5) the power to examine
witnesses, to compel the attendance of witnesses, and to hear the litigation of
issues on a hearing; and

 

(6) the power to enforce decisions or impose
penalties.

Fiske v. City of Dallas, 220 S.W.3d 547, 551 (Tex. App.CTexarkana
2007, no pet.); Alejandro v. Bell, 84 S.W.3d 383, 391 (Tex. App.CCorpus
Christi 2002, no pet.); Blankenship v. Brazos Higher Educ. Auth., 975
S.W.2d 353, 360 (Tex. App.CWaco
1998, pet. denied); Village of Bayou Vista v. Glaskox, 899 S.W.2d 826,
829 (Tex. App.CHouston [14th Dist.] 1995, no
writ) (quoting Parker v. Holbrook, 647 S.W.2d 692, 695 (Tex. App.CHouston
[1st Dist.] 1982, writ ref=d
n.r.e.)).








The City code explicitly confers two of those
powers on the City councilCthe
power to hear and ascertain facts and the power to subpoena and examine
witnesses.  Fort Worth, Tex. Ordinances
no. 1748, ' 1 (1933) (captioned, ACouncil
and Committee Authority to Investigate Department and Subpoena Witnesses@).  Germane to this appeal, the Texas Tax Code
confers on a taxing unit like the City the power to Adetermine
who represents the unit to enforce the collection of delinquent taxes.@  Tex. Tax Code Ann. ' 6.30(b)
(Vernon 2008).[1]  The power to Adetermine
who represents the unit@ implicates at least two more of
the powers enumerated above: the power to exercise judgment and discretion and
the power to make binding orders.  Id.  Local government code section 54.001 confers
yet another power on the council, the power to enforce and impose penalties: AThe
governing body of a municipality may enforce each rule, ordinance, or police
regulation of the municipality and may punish a violation of a rule, ordinance,
or police regulation.  Tex. Loc. Gov=t Code
Ann. ' 54.001(a)
(Vernon 2008).  Finally, though not
directly relevant to the issues in this case, the council has the power to
affect the personal or property rights of private persons.  See, e.g., id. '
251.001(a) (Vernon 2005) (providing that municipality may exercise right of
eminent domain by condemning private property for public use); see also City
of Carrollton v. Singer, 232 S.W.3d 790, 797 (Tex. App.CFort
Worth 2007, pet. denied) (discussing municipality=s power
to condemn private property).  Thus, all
six powers relevant to the determination of whether a body=s
proceedings are quasi-judicial abide in the City council.  We therefore conclude and hold that the City
council possesses quasi-judicial power.








2.     Did the alleged defamatory statements
relate to an existing or proposed quasi-judicial proceeding?

The second question is whether Linebarger=s and
Eppstein=s
alleged defamatory statements related to an existing or proposed quasi-judicial
proceeding.  See Clark, 248 S.W.3d
at 431; 5-State Helicopters, Inc., 146 S.W.3d at 257.  Stated differently, was the City exercising
its quasi-judicial power when it deliberated about whether to extend the Joint
Venture=s
contract and, later, about whether to award the new contract to the Joint
Venture or Linebarger?

The council=s
deliberations implicated several of the quasi-judicial powers enumerated
above.  See Fiske, 220 S.W.3d at
551; Alejandro, 84 S.W.3d at 391. 
Before ultimately awarding the contract to Linebarger, the City council
exercised its judgment and discretion by deciding not to extend the Joint
Venture=s
contract; ordered an investigationCthe
auditCand
heard argument from the parties; decided to whom to award the new contract; and
made a binding decision to award the contract to Linebarger.








Of these powers, the most significant is the
council=s power
to decide the controversy related to the alleged defamatory statements.  The controversy related to the alleged
defamatory statements was the Joint Venture=s
performance under the contract and whether the counsel should extend the
contract.  The council=s power
to decide the controversy makes this case like Reagan and 5-State
Helicopters, Inc.Cwhere the governmental entity
with the power to decide and resolve a controversy was deemed to have exercised
quasi-judicial powerCand unlike Hurlbut and ClarkCwhere
the governmental entity did not have the power to decide the controversy.  Compare Reagan, 166 S.W.2d at 913, and
5-State Helicopters, Inc., 146 S.W.3d at 258, with Hurlbut, 749
S.W.2d at 767, and Clark, 248 S.W.3d at 433.

The Joint Venture argues that when analyzing
whether the City council exercised quasi-judicial power, there is a difference
between the council=s determining to award or extend
a contract and the council=s
enacting or interpreting an ordinance.  The
latter, argues the Joint Venture, is the exercise of quasi-judicial power, but
the former is not.  We disagree.  While awarding contracts and enacting
ordinances may implicate different powers or the same powers to different
extents, both activities potentially fall within the six enumerated powers that
determine whether a body=s proceedings are
quasi-judicial.  See Fiske, 220
S.W.3d at 551; Alejandro, 84 S.W.3d at 391; Blankenship, 975
S.W.2d at 360.  More specifically, as
described above, the council=s
actions with regard to the tax collection contract in this case implicated its
quasi-judicial powers, especially the power to decide and resolve the
controversy related to the allegedly defamatory statements.








Because the City council exercised quasi-judicial
power in its  deliberations on whether to
extend the Joint Venture=s contract, we hold that the
proceeding in question was quasi-judicial.








The final question is whether the allegedly
defamatory communications  bear some
relationship to the pending or proposed quasi-judicial proceeding.  See Clark, 248 S.W.3d at 431.  When Linebarger and Eppstein presented their
memorandum to City staff on December 7, 2004, City staff and the City council
had already begun the process of reviewing the Joint Venture=s
performance under the contract and deliberating whether to exercise its option
to extend the contract.  This process
began no later than October 2004, when the Joint Venture contacted City staff
about exercising the extension option, and continued through November 30, when
the option was first set on the City council=s
executive session agenda.  Thus, the
proceeding was well under way by the time Linebarger and Eppstein published the
first of the alleged defamatory statements on December 7.  Further, all of the allegedly defamatory
statements identified by the Joint Venture relate to the quality of the
services provided by the Joint Venture. 
Even if there were a doubt as to the communications=
relevance to the City council=s quasi‑judicial
proceeding, we would be required to resolve it in favor ofCnot
againstCa
relation to the proceeding.  See
5-State Helicopter, Inc., 146 S.W.3d at 259.  Therefore, we hold that the alleged
defamatory statements bore some relationship to the quasi-judicial proceeding
pending before the City council.

                                             Conclusion

Having concluded that Linebarger=s
allegedly defamatory statements to the council related to a proceeding in which
the council exercised its quasi-judicial power, we hold that the statements are
absolutely privileged, regardless of the their truth, falsity, or malicious
nature.  See id.  Because the Joint Venture=s claims
for defamation, tortious interference, business disparagement, and conspiracy
to commit these torts are for defamation-type damages based on the allegedly
defamatory statements, the absolute privilege bars all of their claims.  We therefore hold that the trial court did
not err by granting a traditional summary judgment in favor of Linebarger and
Eppstein on the Joint Venture=s
claims.  We overrule the Joint Venture=s first
issue.








Having overruled the Joint Venture=s first
issue, we do not reach its second, third, and fourth issues, in which it argues
that the trial court erred by granting Linebarger=s and
Eppstein=s
no-evidence motions for summary judgment, by denying the production of
documents to the Joint Venture, and by placing the burden on the Joint Venture
to prove the falsity of Linebarger=s
allegedly defamatory statements.[2]  We therefore affirm the trial court=s
summary judgment.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; GARDNER, J.; and WILLIAM
BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  May 7, 2009











[1]AThe governing body of a
taxing unit other than a county may determine who represents the unit to
enforce the collection of delinquent taxes.@  Id.





[2]Nor do we reach the Joint
Venture=s argument on its first issue
that the trial court misapplied the Noerr-Pennington doctrine, which
Linebarger and Eppstein argue provides an independent basis for immunity.  See  E. R.R. President=s Conf. v. Noerr Motor
Freight, Inc.,
365 U.S. 127, 81 S. Ct. 523 (1961); United Mine Workers of Am. v. Pennington,
381 U.S. 657, 85 S. Ct. 1585 (1965).