In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-445 CV


____________________



FIELDING HARWELL, Appellant



V.



JAMES W. SHRIEVE, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-10-09376-CV 






MEMORANDUM OPINION


 Pursuant to section 51.014(a)(5) of the Texas Civil Practice and Remedies Code, (1)
Fielding Harwell appeals the denial of his motion for summary judgment. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon Supp. 2007). Harwell, a Technical
Guidance Biologist for the Texas Parks & Wildlife Department ("TPWD"), was sued by
James W. Shrieve for defamation. (2) Harwell filed combination traditional and no-evidence
motions for summary judgment asserting, inter alia, absolute privilege. Shrieve's summary
judgment response included a reply to Harwell's absolute privilege contention. As noted, the
trial court ultimately denied Harwell's summary judgment motions. Harwell's third appellate
issue complains of the trial court's denial of his motions for summary judgment based upon
absolute privilege. He contends that Shrieve failed to point out any allegedly defamatory
statements by Harwell that were made outside either a judicial proceeding or a quasi-judicial
proceeding and, therefore, not absolutely privileged. 

 Shrieve's suit against Harwell was filed on October 21, 2005, in Montgomery County. 
Prior to this, Shrieve filed suit against TPWD in a Travis County district court on September
24, 2004, seeking, inter alia, injunctive relief, declaratory judgment, and damages for
"tortious interference, business disparagement." Shrieve's request for a temporary injunction
against TPWD was denied by the district judge in Travis County, with Shrieve's interlocutory
appeal resulting in an affirmance of the trial court's denial. See Shrieve v. Tex. Parks And
Wildlife Dept., No. 03-04-00640-CV, 2005 WL 1034086 (Tex. App.--Austin May 5, 2005,
no pet.). At their core, Shrieve's lawsuits against TPWD and Harwell relate to TPWD's
declaring Shrieve ineligible to participate in the Managed Land Deer Permit ("MLDP")
program for a three-year period. (3) Shrieve's interest in the MLDP program stemmed from his
ownership of Whitetail Junction Ranch, an expanse of property located in Kimble County,
and operated as a hunting lodge specializing in guided hunts for white-tailed deer. 

 To participate in the MLDP program, a landowner must agree to subject his property
to a Wildlife Management Plan ("WMP"), a comprehensive wildlife and habitat management
program created and overseen by TPWD. See 31 Tex. Admin. Code § 65.25 (2008) (Tex.
Parks and Wild. Dept., Wildlife Management Plan (WMP)). To be eligible to participate at
the program level chosen by Shrieve, his WMP was required to include deer population data
and deer harvest data from particular years, and include at least four recommended habitat
management practices. Id. § 65.25(C)(i)-(iii). WMPs are valid for only one year and to be
valid the WMP must be signed by a TPWD biologist or technician. Id. § 65.25(a)(3)(B). A
landowner may apply for MLD permits by submitting to TPWD, by August 15 of each year,
the required data. See id. § 65.26(h) (2008) (Tex. Parks and Wild. Dept., Managed Lands
Deer Permits (MLDP)-White-Tailed Deer). 

 TPWD may deny a request for MLD permits for three years if the landowner is not
in compliance with his or her WMP. Id. § 65.26(g)(2). However, denial of a request for
MLD permits does not affect the landowner's ability to hunt on his own property or to allow
commercial hunting on the property during the standard open hunting season. Compare 31
Tex. Admin. Code § 65.26 with Tex. Parks & Wild. Code Ann. § 42.0175 (Vernon 2002). 
A landowner may request review of TPWD's denial of an application for MLD permits. See
31 Tex. Admin. Code § 65.24(e) (2008) (Tex. Parks and Wild. Dept., Permits). A request
for review is entertained by a review panel consisting of the Director of the Wildlife
Division, the Regional Director with jurisdiction, the Big Game Program Director, and the
White-tailed Deer or Mule Deer program leader, as appropriate. Id. § 65.24(e)(3)(A)-(D). 
The decision by the review panel is final. Id. § 65.24(e)(4). 

 Summary judgment evidence indicates the decision to initially declare Shrieve
ineligible for the program for the three-year period was based in large part on information
Harwell provided to his immediate supervisor, Max S. Traweek, Wildlife District Leader,
District 4. Shrieve was informed of his ineligibility by a letter dated August 20, 2004, from
Max Traweek. The letter also informed Shrieve how to seek review of Traweek's decision. 
The review panel was assembled and a hearing conducted with Shrieve and his attorney
being permitted to participate. The review panel handed down its decision via a letter to
Shrieve dated September 15, 2004. The review panel upheld Traweek's decision. The
reasons provided by the review panel for upholding Shrieve's ineligibility for the MLD
permits reads, in pertinent part, as follows: 

 The Appeals Panel was presented no new arguments to refute the following
points:

 1. The population goal of the Wildlife Management Plan
(WMP), agreed upon by you and Fielding Harwell, is "8 - 10
acres per deer."

 2. You and others in your party acknowledged that population
reduction was necessary to achieve the population goal.

 3. TPWD records indicate that over 400 deer were added to the
property over a three-year period although the population
reduction goal had not been achieved.

 4. The TPWD biologist in charge of the WMP was not notified
of these stockings that were in direct contradiction to the WMP. 


 The sum of these points clearly demonstrates noncompliance with the WMP,
and the absence of trust and cooperation that TPWD expects of landowners
being afforded liberal management opportunities through MLDPs. 


 Harwell was the TPWD biologist in Shrieve's district who formulated Shrieve's yearly
WMPs for the 2000 through 2003 hunting seasons. In his second amended petition, Shrieve
alleged the following: 

 5. Harwell has made false, disparaging, material statements about Shrieve and
his business, and, as a result of these statements, Shrieve has suffered a three-year plus suspension of his Managed Land Deer Permit ("Permit") on his
Whitetail Junction Ranch in Kimble County, Texas. See Exhibit "A," August
20, 2004 notification of suspension and Exhibit "B," August 5, 2005
confirmation of suspension. Harwell's slander suggests Shrieve was involved
in illegal conduct and is dishonest. Harwell's statements constitute slander per
se and damage Shrieve's character and reputation.


 . . . .


 8. Harwell's statements are not privileged and Harwell has no immunity.


 As a threshold matter, Shrieve disputes our jurisdiction to entertain Harwell's
interlocutory appeal. Therefore, we must first determine whether we have the authority to
review the trial court's denial of Harwell's motion for summary judgment which raised the
defensive issues of absolute privilege, qualified privilege, official immunity, and substantial
truth. (4) Shrieve contends that as Harwell appealed pursuant to section 51.014(a)(5) of the
Texas Civil Practice and Remedies Code, we have no jurisdiction to address any ground
except those related to Harwell's "position as a government employee." Citing City of
Houston v. Kilburn, 849 S.W.2d 810, 812 n.1 (Tex. 1993), Shrieve argues that the Supreme
Court reads section 51.014(a)(5) "to apply to claims of qualified or official immunity."
Shrieve further contends that the Supreme Court in Kilburn "refus[ed] to hear interlocutory
claims of sovereign immunity unless such claims are based on the employee's official
immunity." 

 However, since Kilburn was decided, section 51.014(a) has been amended on at least
four occasions, and the Supreme Court has expanded its approach to interlocutory appeals
by both governmental entities and government employees. For example, in Newman v.
Obersteller, 960 S.W.2d 621 (Tex. 1997), the issue involved whether section 101.106 of the
Texas Tort Claims Act conferred immunity on a public school employee, once a suit against
a governmental entity arising out of the same facts had proceeded to judgment. Id. at 621-22. 
The Texas Supreme Court held: 

 [t]he language 'bars any action' is an unequivocal grant of immunity in this
context. That section 101.106 does not use the word 'immunity' is of no
consequence. Our reading of section 101.106 is consistent with the structure
and intent of the Tort Claims Act. It is also consistent with section
[51.014(a)(5)], (5) which protects public officials asserting an immunity defense
from the litigation process.


Id. at 622.

 In Univ. of Tex. S.W. Med. Ctr. of Dallas v. Margulis, 11 S.W.3d 186 (Tex. 2000),
the Supreme Court held the court of appeals had jurisdiction over an interlocutory appeal
under section 51.014(a)(5) from the denial of a partial summary judgment. Id. at 188. The
court of appeals dismissed the case because it found the partial summary judgment motion
did not assert immunity but was, instead, based on a defect in the plaintiff's pleadings. Id. 
Pointing out that the motion's first sentence read that the government employees "'hereby
move for partial summary judgment on their defense of qualified immunity[,]'" the Supreme
Court held the motion was "'based on' immunity within the meaning of the statute that
permits interlocutory appeals." Id. The Court concluded thusly:

 Even if we assume that the motion should not have been granted because it
was not supported by evidence, a question that we do not decide on this
interlocutory appeal, the motion was 'based on an assertion of immunity.' The
court of appeals has jurisdiction to consider whether the trial court erred in
denying that motion.


Id. 

 The ruling in Margulis is similar to the one made in City of Beverly Hills v. Guevara,
904 S.W.2d 655 (Tex. 1995). In Guevara, the Supreme Court permitted a governmental
entity to appeal under section 51.014(a)(5) the denial of a summary judgment motion
grounded on official immunity when the alleged tortfeasor, a police officer, was not sued in
his individual capacity. Id. at 656. The court of appeals had dismissed the appeal for lack
of jurisdiction, reasoning that because the governmental entity could not rely on the
employee's official immunity, an appeal brought pursuant to section 51.014(a)(5) did not
confer appellate jurisdiction over the interlocutory order. Id. Reversing the court of appeals,
the Supreme Court ruled as follows:

 Section [51.014(a)(5)] authorizes interlocutory appeals for claims 'based on
an assertion of immunity by an individual. . . .' The City's motion for
summary judgment was clearly 'based on' official immunity within the
meaning of section [51.014(a)(5)]. Whether the claim of official immunity
was valid should have been decided on the merits. 


Id. 

 In Thomas v. White, 102 S.W.3d 318 (Tex. App.--Beaumont 2003, pet. denied), we
found jurisdiction of an interlocutory appeal under section 51.014(a)(5) brought by a school
district superintendent, Thomas, following a denial of his summary judgment motion on the
grounds of sovereign immunity. Id. at 320. Relying on City of Cockrell Hill v. Johnson, 48
S.W.3d 887, 892 (Tex. App.--Fort Worth 2001, pet. denied), we initially observed that "[a]s
a government employee asserting immunity, Thomas may appeal the denial of his motion for
summary judgment." Thomas, at 320. In discussing the scope of our jurisdiction when
presented with an interlocutory appeal via section 51.014(a)(5), we noted the statute does not
limit the type of immunity claim upon which the government employee may base his
summary judgment motion. Id. at 320 n.1. We then pointed out that "in Newman, 960
S.W.2d at 622, the Texas Supreme Court interpreted section 51.014(a)(5) as permitting an
appeal of immunity conferred by statute." Id. 

 Admittedly, our interpretation of section 51.014(a)(5), as stated in Thomas, appears
to conflict with the holdings in certain cases cited by Shrieve on this point. More recent
intermediate appellate opinions have indeed embraced this narrowed scope of appellate
jurisdiction when a government employee appeals pursuant to section 51.014(a)(5). See
Astoria Indus. of Iowa, Inc. v. SNF, Inc., 223 S.W.3d 616, 626-27 (Tex. App.--Fort Worth
2007, pet. denied); Castillo v. Flores, No. 01-05-00760-CV, 2006 WL 488609, at *10 (Tex.
App.--Houston [1st Dist.] Mar. 2, 2006, no pet.) (mem. op.); Colbert v. Hollis, 102 S.W.3d
445, 448 (Tex. App.--Dallas 2003, no pet.) (opinions noting appellate jurisdiction is strictly
limited to reviewing interlocutory orders denying summary judgment on official immunity
ground). We are certainly mindful that we must strictly construe statutes authorizing
interlocutory appeals, and that we may not expand our jurisdiction beyond that conferred by
the Legislature. See Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 841 (Tex. 2007). 
Nevertheless, in construing section 51.014(a)(5), our "sole objective" must be to "give effect
to the Legislature's intent[,]" beginning by looking at the plain meaning of the statute. Id.
at 840-41. As we observed in Thomas, under section 51.014(a)(5), the type of "immunity"
asserted by a government employee in a summary judgment motion is unconditional. 
Thomas, 102 S.W.3d at 320 n.1. The Legislature attached no restrictive or provisional
modifier. See generally Bexar County v. Giroux-Daniel, 956 S.W.2d 692, 694 (Tex. App.--San Antonio 1997, no pet.); Delta Air Lines, Inc. v. Norris, 949 S.W.2d 422, 428-29 (Tex.
App.--Waco 1997, writ denied). 

 In Newman, the Supreme Court stated that section 51.014(a)(5) "protects public
officials asserting an immunity defense from the litigation process." Newman, 960 S.W.2d
at 622 (citing Gonzalez v. Avalos, 866 S.W.2d 346, 353 n.1 (Tex. App.--El Paso 1993)
(Larsen, J., concurring), writ dism'd w.o.j., 907 S.W.2d 443 (Tex. 1995)). That portion of
Justice Larsen's concurring opinion in Gonzalez, to which the Newman Court referred, reads
as follows:

 See Legislative History of Tex. S.B. 908, 71st Leg., R.S. (1989) committee
hearings of 3/28/89 and floor discussion of 4/11/89. Senator Whitmire, who
sponsored the legislation, stated before the committee that: "It [the bill]
follows federal law, which is the rule particularly in civil rights cases and
others, where an immunity from prosecution would ultimately be upheld, it
would not be right to put that person through the [litigation] process."


Gonzalez, 866 S.W.2d at 353 n.1 (Larsen, J., concurring). Apparently the Legislature's main
concern in enacting section 51.014(a)(5) was to provide government employees, who raise
immunity from liability or suit from any source, a fast-track procedure for appellate review
when such contentions are denied at the trial level. In the instant case, should Harwell's
claim of absolute privilege be sustained, he possesses immunity from suit. See Hurlbut v.
Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 767-68 (Tex. 1987); Linan v. Strafco, Inc., No. 13-05-027-CV, 2006 WL 1766204, at *2 (Tex. App.--Corpus Christi June 29, 2006, no pet.)
(mem. op.) (citing Hernandez v. Hayes, 931 S.W.2d 648, 650 (Tex. App.--San Antonio 1996,
writ denied)); Ross v. Heard, No. 04-04-00110-CV, 2005 WL 357032, at *2 (Tex. App.--San
Antonio Feb. 16, 2005, no pet.) (citing Hurlbut, 749 S.W.2d at 767). We therefore conclude
that Harwell's "absolute privilege" ground for summary judgment is sufficiently based on
an assertion of immunity to give us jurisdiction under section 51.014(a)(5) to decide the
claim on the merits. See Guevara, 904 S.W.2d at 656.

 Although Harwell filed both traditional and no-evidence motions for summary
judgment, our analysis will focus only on the traditional summary judgment standard. See
Tex. R. App. P. 47.1. In Texas, summary judgment is used "'to eliminate patently
unmeritorious claims and untenable defenses[.]'" Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989) (quoting City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 n.5
(Tex. 1979)). To obtain summary judgment, the movant has the burden of showing that there
is no genuine issue of material fact and that he is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c). In deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the non-movant will be taken as true. 
Every reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
 Summary judgment for a defendant is proper when the summary judgment evidence
negates an essential element of the plaintiff's cause of action as a matter of law or
conclusively establishes all elements of an affirmative defense as a matter of law. Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant produces
sufficient evidence to establish the right to summary judgment, the burden shifts to the
nonmovant to produce controverting evidence raising a fact issue as to the elements negated. 
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); see also Torres v. Western Cas. & Sur.
Co., 457 S.W.2d 50, 52 (Tex. 1970). We review the granting or denial of a summary
judgment motion de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005). 

 The elements of a cause of action for defamation are stated as follows in the
Restatement of Torts, Second: 

 To create liability for defamation there must be: 

 (a) a false and defamatory statement concerning another;

 (b) an unprivileged publication to a third party;

 (c) fault amounting at least to negligence on the part of the publisher; and 

 (d) either actionability of the statement irrespective of special harm or the
existence of special harm caused by the publication.


Restatement (Second) Of Torts § 558 (1977). As noted above, one of Harwell's grounds
for summary judgment was absolute privilege as to any of the statements Shrieve alleged to
be defamatory. Shrieve's summary judgment response to the absolute privilege ground was
limited to the assertion that Harwell failed to establish the existence of a quasi-judicial
proceeding for which the defamatory statements were made. However, "[w]hether an alleged
defamatory statement is related to a proposed or existing judicial or quasi-judicial
proceeding, and is therefore absolutely privileged, is a question of law." 5-State Helicopters,
Inc. v. Cox, 146 S.W.3d 254, 257 (Tex. App.--Fort Worth 2004, pet. denied). When deciding
the issue, we consider the entire communication in its context, and we must extend the
privilege to any communication that bears some relation to a proposed or existing quasi-judicial proceeding. Daystar Residential, Inc. v. Collmer, 176 S.W.3d 24, 28 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). "All doubts should be resolved in favor of the
communication's relation to the proceeding." Cox, 146 S.W.3d at 257. 

 An absolutely privileged communication is one for which, due to the occasion upon
which it was made, no civil remedy exists, even though the communication is false and was
made or published with express malice. See Bird v. W.C.W., 868 S.W.2d 767, 771-72 (Tex.
1994); James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982); Reagan v. Guardian Life Ins. Co.,
140 Tex. 105, 166 S.W.2d 909, 912 (1942). "The falsity of the statement or the malice of
the utterer is immaterial, and the rule of nonliability prevails even though the statement was
not relevant, pertinent and material to the issues involved in the case." Reagan, 166 S.W.2d
at 912. The absolute privilege doctrine applies to communications related to both proposed
and existing judicial and quasi-judicial proceedings. See James, 637 S.W.2d at 916-17;
Reagan, 166 S.W.2d at 912-13; Cox, 146 S.W.3d at 257. The doctrine

 protects the public interest by shielding responsible government officials
against harassment and inevitable hazards of vindictive or ill-founded damage
suits brought on account of actions taken in the exercise of their official
responsibilities, even when, at times, it may result in individual citizens
suffering pecuniary loss as a result of oppressive or malicious actions by
governmental officials.


Town of S. Padre Island v. Jacobs, 736 S.W.2d 134, 143 (Tex. App.--Corpus Christi 1986,
writ denied) (op. on reh'g) (citing Barr v. Matteo, 360 U.S. 564, 565, 79 S.Ct. 1335, 3
L.Ed.2d 1434 (1959)). A proceeding is considered to be "quasi-judicial" if it is conducted
by a governmental executive officer, board, or commission that has the authority to hear and
decide the matters coming before it or to redress grievances over which it extends its
authority. Cox, 146 S.W.3d at 257; Hernandez, 931 S.W.2d at 651. 

 In his summary judgment response, Shrieve argued that under the existing facts: 

 there was no proceeding of any governmental or quasi-governmental body. 
Harwell simply made defamatory statements (apparently over a period of time
prior to August of 2004, as Harwell corroborated by his August 28, 2004
letter), outside of any proceedings, in fact in advance of even any
investigation. The letter states that after the statements were made "an
investigation began." 


A similar argument was addressed by the Fort Worth Court of Appeals in the following
manner:

 Even communications made in contemplation of or preliminary to a quasi-judicial proceeding are privileged if they concern a matter that the quasi-judicial body is authorized to investigate and decide. Such communications
stand 'on the same footing [regarding] libel as do communications made in a
court of justice.' 


Cox, 146 S.W.3d at 257 (citations omitted). In describing the WMP/MLDP program, the
Austin Court of Appeals in Shrieve v. TPWD began with this observation:

 The Department [TPWD] has the statutory responsibility of managing the
state's deer population. See Tex. Parks & Wild. Code Ann. §§ 12.001, 61.002,
61.051, 61.054 (West 2002). An important aspect of deer population
management is hunting, which is both a traditional recreational pastime for
many Texans and a lucrative commercial activity for Texas landowners who
lease their property for hunting. Through the statutes and regulations
administered by the Department, Texas endeavors to strike a balance among
the goals of preventing deer overpopulation, fostering hunting as a recreational
and economic activity, and preventing excessive depletion of the deer
population. See id.


Shrieve, 2005 WL 1034086, at *1. 

 Additionally, section 12.001(a) of the Texas Parks and Wildlife Code states that
TPWD "shall administer the laws relating to game, fish, oysters, and marine life, as set out
in this code." Tex. Parks & Wild. Code Ann. § 12.001(a) (Vernon 2002). Section
12.0011(a) provides that TPWD "is the state agency with primary responsibility for
protecting the state's fish and wildlife resources." Id. § 12.0011(a). Chapter 61 of the Parks
and Wildlife Code, commonly referred to as the Wildlife Conservation Act of 1983, includes
section 61.051 which reads, in pertinent part, as follows:

 § 61.051. Duty to Investigate and Study Certain Wildlife Resources

 (a) The department [TPWD] shall conduct scientific studies and
investigations of all species of game animals, game birds, and aquatic animal
life to determine:

 (1) supply;

 (2) economic value;

 (3) environments;

 (4) breeding habits;

 (5) sex ratios; and

 (6) effects of any factors or conditions causing increases or
decreases in supply.

 (b) The studies and investigations may be made periodically or
continuously.


Id. § 61.051(a)(1)-(6), (b).


 As noted above, a body is deemed to be quasi-judicial in nature when it possesses "the
power or duty to investigate and to draw conclusions from such investigations." Parker v.
Holbrook, 647 S.W.2d 692, 695 (Tex. App.--Houston [1st Dist.] 1982, writ ref'd n.r.e.). It
is readily apparent from the facts and circumstances contained in the record that the review
panel does qualify as a quasi-judicial body. Shrieve does not direct our attention to any
evidence contained in the record which indicates Harwell's letter was communicated to
anyone other than the members of the review panel, and our review of the record revealed
none. We must resolve all doubts in favor of the communication's relation to a proposed or
existing quasi-judicial proceeding. See Daystar Residential, Inc., 176 S.W.3d at 28; Cox,
146 S.W.3d at 257. We conclude that Harwell met his summary judgment burden of proving
that any alleged defamatory communication was absolutely privileged because it was related
to a proposed or existing quasi-judicial proceeding. See Bird, 868 S.W.2d at 771-72; James,
637 S.W.2d at 916-17; Reagan, 166 S.W.2d at 912-13; Cox, 146 S.W.3d at 257. In
sustaining this burden, Harwell has demonstrated he is entitled to summary judgment as a
matter of law. See Sci. Spectrum, Inc., 941 S.W.2d at 911. 

 Under this circumstance, the burden shifted to Shrieve to produce controverting
evidence raising a fact issue as to Harwell's claim of absolute privilege. See Walker, 924
S.W.2d at 377; Torres, 457 S.W.2d at 52. However, Shrieve failed to carry this burden, as
his summary judgment evidence focuses on either the alleged untruthfulness of Harwell's
statements or on Harwell's other summary judgment grounds. (6) Therefore, based on the
record before us and the law as discussed above, we sustain Harwell's third issue. We
therefore reverse the trial court's order denying Harwell's motion for summary judgment and
render judgment dismissing Shrieve's defamation action against Harwell. We need not
address Harwell's remaining issues, as they would not result in greater relief. See Tex. R.
App. P. 47.1.

 REVERSED AND RENDERED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on December 12, 2007

Opinion Delivered May 22, 2008


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Section 51.014 reads, in pertinent part, as follows: "(a) A person may appeal from
an interlocutory order of a district court, county court at law, or county court that: (5) denies
a motion for summary judgment that is based on an assertion of immunity by an individual
who is an officer or employee of the state or a political subdivision of the state[.]" 
2. A second TPWD employee, Mitch Lockwood, was also named as a defendant by
Shrieve, but was later non-suited. 
3. On March 28, 2008, the Texas Supreme Court issued its ruling in Mission Consol.
ISD v. Garcia, 51 Tex. Sup. Ct. J. 621, 2008 WL 821037, at *4 (Tex. Mar. 28, 2008),
wherein it held, 


 Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a
governmental unit, whether it is sued alone or together with its employees, are
assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.


While section 101.106(a) appears to provide an election of remedies to a plaintiff that would
bar any suit against any individual employee of the governmental unit regarding the same
subject matter, because of our holding under the third appellate issue, we need not analyze
this issue by applying the holding in Mission Consolidated. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.106 (Vernon 2005).
4. The denied summary judgment motions also made defensive claims of statute of
limitations and statutory immunity under section 101.106. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.106 (Vernon 2005). 
5. When Newman was decided in April of 1997, section 51.014(a)(5) was numbered
"51.015(5)." See Newman, 960 S.W.2d at 622. Later that year, the Texas Legislature
amended section 51.014 by designating the existing text as subsection "(a)," establishing a
subsection (b), and adding two new bases for interlocutory appeal. See Act of May 27, 1997,
75th Leg., R.S., ch. 1296, § 1, 1997 Tex. Gen. Laws 4936, 4937. In this opinion, we will
refer to the current version of section 51.014(a)(5) as its wording is identical to that of former
section 51.014(5). 
6. Recall that Harwell also requested summary judgment based on statute of limitations,
qualified privilege, official immunity, substantial truth, and section 101.106. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.106 (Vernon 2005).